## STATE v. McINTOSH.

1. JUROR—INDIFFERENCE—TRIAL JUDGE.—It is for the trial judge to determine whether a proposed juror is indifferent or not. Therefore, this court declined to interfere where the trial judge ordered a juror to stand aside, who, in answer to the question on his *voir dire*, whether he was opposed to capital punishment, said, "Well, I am inclined that way."

2. DEFENCE—REASONABLE DOUBT—OMISSION TO CHARGE.—The judge was requested to charge the jury, that "While it is true that the defendant is required to prove that he was of unsound mind at the time of the homicide by the preponderance of the evidence, it is also true that upon the consideration of the testimony of the whole case, the State's as well as the defendant's, if any reasonable doubt remain in the mind of the jury, the defendant is entitled to a verdict of not guilty." This request was not refused, but was not approved or charged. *Held*, that it was a correct proposition of law, and the omission to charge it on request was error. MR. CHIEF JUSTICE McIVER *dissenting*, being of opinion that it was afterwards substantially charged.

3. INSANITY AS AN EXCUSE FOR CRIME.—A person on trial for the crime of murder cannot be excused under his plea of insanity at the time of the homicide, if he then possessed the power to distinguish right from wrong in the act itself—to recognize that the act complained of is either morally or legally wrong.

4. CHARGE ON FACTS—HOMICIDE—MOTIVE.—The trial judge did not err in charging, as requested by the State, that "in homicide cases no motive need be proved by the State, for it would be alarming, indeed, if no one could be found guilty for committing the most horrible deed, unless some external evidence could be shown of the motive which prompted him," where the judge added, "I do not pretend by charging you that that is law, to make any comments on the facts of this case."

5. IBID.—IBID.—There was no error in charging: "Malice is the deliberate and well formed purpose to do the unlawful act; in this case, to take life without justification or excuse."

6. IBID.—IBID.—In commencing his charge by saying, "This case is one of

murder against the defendant, beyond all question the gravest offence known to the law," the judge did not charge upon the facts, but merely stated what was the charge preferred by the indictment.

7. MANSLAUGHTER—USE OF DEADLY WEAPON—CHARGE.—The jury after long deliberation returned into the court room and asked for further instructions as to the difference between murder and manslaughter. The judge responded by general instructions, whereupon the foreman said: "That is just what is the matter with us. Suppose one of these jurors insults me, and I walk into that room and get a gun and shoot him down, would that be excusable?" The judge replied: "No words, however aggravating, will justify or excuse an assault where a deadly weapon is used; but the apprehension of personal violence is a different thing. The law does not excuse an assault and reduce it to manslaughter if a deadly weapon is used—a gun or pistol, or anything of that sort.". *Held.* that this instruction, when construed with other parts of the charge, was not erroneous. MR. JUSTICE McGOWAN *dissenting.*

Before FRASER, J., Abbeville, June, 1892.

This was an indictment against Singleton A. McIntosh for the murder of Edward N. Newby on December 24, 1891. The judge charged the jury as follows:

*Gentlemen of the jury*: This case is one of murder against the defendant, beyond all question the gravest offence known to the law; and I think without any doubt, an investigation of a case of this sort involves the most serious duty that any citizen is called upon to decide, whether acting in the capacity of judge which I occupy or as juror which you occupy. I have no doubt that you will do your duty conscientiously and fearlessly.

Murder is the killing of a person with malice aforethought, express or implied, and before taking up the requests to charge, it is, perhaps, better that I should indicate to you very briefly the different classes of homicide. Now, when a man takes the life of another accidentally, when he is in pursuit of some lawful occupation in a reasonably prudent way, he is not punishable. And, then, there is justifiable homicide, where an officer takes the life of a criminal in the lawful discharge of his duty. Then there is excusable homicide, where a man takes the life of another in defence of his own life or of his family. Where a man, being without fault himself, finds himself put in

such a position by his adversary that he is in great danger of some great bodily harm, or of losing his own life, he has a right to strike to defend himself. When a man does not seek a difficulty with another, he is not bound to run to defend himself. He must retreat to the wall and then defend himself. Then, another class of homicide other than these three, is known as manslaughter. Manslaughter is not alone the killing of a person in sudden heat and passion. Any unlawful killing without malice is manslaughter; a man may undertake to ignorantly administer dangerous medicines to another, or if one is killed through criminal carelessness—for instance, if a man carelessly shoots at a cow and, instead of killing the cow, kills a man.

So, any killing is either murder, manslaughter, accidental, justifiable or excusable. Manslaughter, remember, is the felonious, unlawful killing without malice. If you come to the conclusion that it is necessary for you to draw a distinction in this case between murder and manslaughter, because, notwithstanding the special plea, the record stands before you on the whole charge made by the State; if the State had put up no evidence at all, your verdict would be not guilty. So it is not only a question of soundness or unsoundness of mind before you, but the whole question of guilty or not guilty. Malice is the main ingredient of murder. There need not be necessarily an old grudge or hatred. Malice is the unlawful purpose to do an unlawful act. With these general remarks, I will read the requests to charge:

First. "The defendant is presumed by law to be sane; the presumption can be removed by him, and if the evidence of unsoundness of mind preponderates, he is entitled to an acquittal." That request has been a little enlarged, and I think states more correctly the exact position taken by our courts on the subject.

Second. "While it is true that the defendant is required to prove that he was of unsound mind at the time of the homicide, by the preponderance of the evidence it is also true, that upon the consideration of the testimony on the whole case, the State's as well as the defendant's, if any reasonable doubt re-

main in the mind of the jury, the defendant is entitled to a verdict of not guilty." Before going any further, I will state the general proposition of law, that when the jury are informed by the testimony that the defendant has killed the deceased, and they know nothing about it, the mere act of killing alone carries along with it the presumption of an unlawful intent, and would be sufficient to find a verdict of guilty, subject to qualifications which I will state later.

Third. "If the jury believe that McIntosh was laboring under delusion caused by unsoundness of mind when he committed the homicide, and that he killed Newby while acting as he thought in self-defence, supposing that Newby was attempting to take his life or inflict great bodily harm, the jury must acquit, though the danger was imaginary." Well, that proposition is correct in the main, subject to this qualification: While the law generally is that he must show the jury that he had reasonable ground to believe that he was in danger, it is for the jury to say whether or not, in making out that defence of self-defence, that the ground was reasonable. But if, however, the jury come to the conclusion that there was no real danger, but that he actually thought that he was in danger of losing his life, whether that apprehension on his part grew out of nervousness or timidity or whatever it may be, yet in point of fact, if the apprehension was real, I have always advised the jury not to convict of murder, but to reduce it to manslaughter, because the malice and intent to take life were wanting. If, however, the defendant was of unsound mind, and the jury traces the killing to the unsoundness of mind, then it stands upon an entirely different footing, and the man would be entitled to an acquittal, because the act of killing was in consequence of that unsoundness of mind.

Fourth. "Unless the jury believe that McIntosh was capable of acting from an evil intent, and that such evil intent had arisen in the mind before the act was committed, they should acquit." I think that is law. Any length of time before the act was committed is sufficient; it is not necessary that it should be a day or a week or an hour.

Fifth. "There is no legal test of insanity, but it is a question

of fact, to be decided by the jury upon all the evidence in the case, as to the soundness or unsoundness of McIntosh's mind at the time of the homicide." In a modified sense, that is true. Insanity is a question of fact, yet there are certain principles of law laid down which you must consider in coming to your conclusion as to that question of insanity. Insanity is a disease of the mind which is in an unnatural and unsound state, and it arises from many causes, and these causes are sometimes physical and sometimes moral, as in a case, for instance, of excessive drink or of grief. Its effect as a defence is the same in all cases, and if the mind becomes unsound as the effect of long continued use of alcoholic stimulants, it is equally as good as if the insanity is from any other cause. This insanity, however, is to be distinguished from mere drunkenness, which is no excuse for crime. It is true, that a man may be so much under the influence of alcohol when he commits a crime, that the jury may not find the intent to kill, which makes malice, and reduce the killing to manslaughter, but the want of criminal intent ought to be very clear. The act charged as a crime must be the consequence of a diseased state of mind—such condition of the mind, however, to be distinguished from "mere drunkenness" or "ungovernable temper," or what is called "emotional insanity," which do not excuse crime. Where the deprivation of the understanding and memory is total, fixed and permanent, it excuses all acts, and a man under temporary insanity is not in a condition to be guilty of crime. The insanity must be of such a kind as to deprive the prisoner of the use of reason, as applied to the act in question, and the knowledge that he is doing wrong in committing it. If, though somewhat deranged, he is able to distinguish right from wrong in his own case, and to know that he is doing wrong in the act committed, he is liable to punishment. The test is the capacity to distinguish between right and wrong as to the particular act with which the defendant is charged. If, however, the accused is of unsound mind, and the act is the effect of the unsoundness, even though aggravated by the alcoholic stimulants, he is not responsible, for the man of unsound mind cannot be held any more responsible for the improper use of alcohol than for the act itself, if committed

without the use of alcohol. Now, in one of our own cases, decided a few years ago (*State* v. *Bundy*, 24 S. C., 439), the Supreme Court laid this down: "In order to relieve himself from responsibility for a criminal act by reason of mental unsoundness, the prisoner must show that he was under a mental delusion, or in some unnatural state of mind, by reason of mental disease, and that at the time of the act he did not know that the act he committed was wrong or criminal, or punishable, either the one or the other. Because, notwithstanding his mind may be diseased, if he is still capable of forming a correct judgment as to the nature of the act, as to its being morally or legally wrong, he is still responsible for his act, and punishable, as if no mental disease existed at all."

Sixth. "Although the law may presume malice from the act of killing, yet when the State has introduced testimony to prove the circumstances attending the homicide, from which a conclusion of malice or want of malice is to be drawn, the presumption of malice is not applicable to the case, and cannot be relied on, but the jury must be satisfied of the existence of malice beyond all reasonable doubt." The court adds: And satisfied from the testimony in the case.

Seventh. "In ascertaining the soundness or unsoundness of the prisoner's mind at the time of the homicide, the jury must take into consideration the evidence as to his whole life—the evidence as to epileptic seizures, alcoholism; as to his long continued and excessive use of alcoholic drinks; as to instances of insanity, paralysis, alcoholism, or other nervous diseases in other members of his family, lineal or collateral; as to the severe blow on the head and its results; as to changes in conduct and manner; and as to his want of motive in the commission of the act." That is all true, and the jury will take into consideration all of the testimony which is offered before and after, and it is for you to say what it is worth. The question for the jury to determine is not whether he was sane or insane afterwards—after the commission of the alleged act.

Eighth. "The jury are to consider the state of McIntosh's mind at the time the homicide was committed, and if the evidence produced establishes that he was unsound, he should be

acquitted." Well, I charge you that law subject to the quali-
fication which I gave you a while ago, that he was not able to
distinguish between right and wrong as to the action in ques-
tion, for our courts do hold that a man's mind may be sound
in some things and unsound in others.

Ninth. "If the jury believe that the defendant has been
proved of unsound mind at any time prior to the commission
of the homicide, then this condition of mind is presumed to
continue until the contrary is established to the satisfaction
of the jury." That is the law in cases of insanity, if it is once
established that a man is insane; if it is proved that a man has
had delirium tremens a month ago and on yesterday he was
charged with murder, he could not bring that up to prove that
he was not responsible; but not so as to when a man is insane.
If he is once proved to be insane, that continues until it is
removed after that—that he has recovered.

Request of solicitor to charge: "In homicide cases no motive
need be proved by the State, for it would be alarming indeed,
if no one could be found guilty for committing the most hor-
rible deed unless some external evidence could be shown of
the motives which prompted him." I don't pretend, by charg-
ing you that that is law, to make any comments on the facts of
this case. I think that is law, but I will say that it is suffi-
cient to prove the unlawful *intent*, and the proof of motive is
only one of the modes of proving the intent to kill, and the
want of motive is one of the modes which the defence can pro-
perly rely upon to ask the jury to infer that either the killing
was not done by the defendant, or that it was not done by any
improper intent. Malice is the deliberate and well formed pur-
pose to do the unlawful act—in this case, to take life without
justification or excuse. Intent is not necessarily synonymous
with "malice," because, if the intent is properly self-defence, it
is not unlawful. If a man is standing up where he ought to be,
not doing any harm, and he finds a man about to take his life,
he can then take life to protect himself; therefore, intent in
this case must be a criminal intent to take life.

Gentlemen, I believe I have gone over the whole case. That
question as to unsoundness of mind is for you entirely. The

defendant is entitled to every reasonable doubt in this case, as in all other criminal cases—of every reasonable doubt. If you have any reasonable doubt that the defendant is guilty of murder, you cannot convict him of murder. If you have any reasonable doubt as to the defendant being guilty of manslaughter, you cannot convict him of manslaughter, but you must acquit him. Give the record to the jury.

12.25 night, the judge was sent for and the jury came in the court room.

The Court: Mr. Foreman, I am informed by the sheriff that you want some further instructions.

The Foreman: Yes, may it please your honor, we cannot agree as between murder and manslaughter, and wish some further instructions on the point.

The Court: Well, sir, murder is the killing with malice aforethought, express or implied—that is, the wilful and malicious intent to take life without excuse. Manslaughter is where the killing is not excusable or justifiable, but where the killing is done in sudden heat and passion, without malice. If at the time the shooting in this case took place the prisoner believed that he was in danger; if he believed that, although he had no right to believe it, but if he believed it, and shoots and kills, he ought not to be convicted of murder, but manslaughter. In self-defence, if a man really believes that he is in danger, the jury may think that he was not in danger, yet he thought that he was in danger, and he shot and killed, in that event it would be manslaughter. Whether with unreasonable belief through timidity or the nervous condition in which he was, and he shot and killed a man, he ought not to suffer for it, if he was laboring under that great excitement.

The Foreman: That's just what's the matter with us; suppose one of those jurors insults me, and I walk in that room and get a gun and shoot him down, would that be excusable?

The Court: No words, however aggravating, will justify or excuse an assault where a deadly weapon is used, but the apprehension of personal violence is a different thing. The law does not excuse an assault and reduce it to manslaughter, if a

deadly weapon is used, a gun or pistol or anything of that sort. Self-defence is where a man is in fear of receiving great bodily harm or of losing his life.   Gentlemen, I hope you will be able to come to some conclusion.

The jury returned the following verdict: "Guilty.   Recommended to mercy."

The defendant appealed on the following grounds:

1. Because the Circuit Judge erred in ruling that a juror, W. C. Robertson, was excluded from sitting on the case because, when asked by the solicitor if he was opposed to capital punishment, he answered, "Well, I am inclined that way."

2. Because the Circuit Judge erred in refusing to charge the jury as requested in defendant's second request to charge.

3. Because the Circuit Judge erred in charging that the insanity which excuses must be of such a kind as to deprive the prisoner of the use of reason as applied to the act in question, and the knowledge that he is doing wrong in committing it.

4. Because the Circuit Judge erred in charging that the test of insanity is the capacity to distinguish between right and wrong as to the particular act with which defendant is charged.

5. Because the Circuit Judge erred in charging that if, though somewhat deranged, he is able to distinguish right from wrong in his own case, and to know that he is doing wrong in the act committed, a prisoner is liable to punishment.

6. Because the Circuit Judge erred in refusing to charge, as requested in defendant's eighth request to charge, to wit: "The jury are to consider the state of McIntosh's mind at the time the homicide was committed, and if the evidence produced establishes the fact that he was of unsound mind, he should be acquitted."   As to this the judge said: "Well, I charge you that law, subject to the qualification which I gave a while ago, that he was not able to distinguish between right and wrong, as to the act in question, for our courts do hold that a man's mind may be sound in some things and unsound in others." Wherein his honor erred.

7. Because the Circuit Judge erred in commenting on the facts in this case when he charged the jury as follows: "In homicide cases no motive need be proved by the State, for it

would be alarming, indeed, if no one could be found guilty for committing the most horrible deed unless some external evidence could be shown of the motive which prompted him. I do not pretend, by charging you that that is law, to make any comments on the facts of this case.''

8. Because the Circuit Judge erred in commenting on the facts in this case when he charged the jury as follows: ''Malice is the deliberate and well-formed purpose to do the unlawful act—in this case, to take life without justification or excuse.''

9. Because the Circuit Judge erred in commenting on the facts in this case when he charged the jury as follows: ''This case is one of murder against the defendant—beyond all question, the gravest offence known to the law.''

10. Because the Circuit Judge erred in charging a principle of law which was not properly applicable to this case, under the following circumstances: The jury, after having been in the jury room ten or eleven hours, came into court at 1 o'clock in the morning to ask further instructions. At that time the foreman said to the judge: ''Suppose one of those jurors insults me, and I walk in that room and get a gun and shoot him down, would that be excusable?'' The judge answered: ''No words, however aggravating, will justify or excuse an assault where a deadly weapon is used.''

11. Because the Circuit Judge erred in charging that the law does not excuse an assault and reduce it to manslaughter, if a deadly weapon is used, a gun or a pistol or anything of that sort.

*Messrs. Parker & McGowan, Benet & Cason* and *E. B. Gary,* for appellant.

*Mr. Ansel,* solicitor, contra.

April 12, 1893. The opinion of the court was delivered by

MR. JUSTICE POPE. Singleton A. McIntosh, having been convicted of the murder of Edward N. Newby and duly sentenced, has appealed to this court to reverse such judgment. The report of this case will be accompanied by the charge of the presiding judge, together with the grounds of appeal,

eleven in number.   We will examine and pass upon these several exceptions in the order indicated by the appellant.

First.  The first exception complains that the Circuit Judge erred in excluding W. C. Robinson from presentation to the prisoner for acceptance or rejection as a juror to try the case.   It seems that at the request of the solicitor he was sworn on his *voir dire*, and after answer by him to the usual questions as to relationship, expression of an opinion, bias or prejudice, he was asked by the solicitor if he was opposed to capital punishment, and to this he replied, "Well, I am inclined that way, sir."   The object of legislation in the matter of the examination of jurors is to obtain triers of issues in our courts free from those objections that relate either to prepossession in favor of or adverse to persons whose rights are on trial or to the laws of the land involved in such trials.   It would be a mockery of justice to entrust the rights of a person on trial for crime in our courts into the hands of a jury so full of prejudice against him that proof of facts in his exoneration would produce no effect in his behalf.   Nor would it be short of a shame to confide such issues in a capital case to one who was opposed to death as a punishment for crime.   Very wisely our laws have confided the determination of whether a proposed juror is indifferent to the Circuit Judge.   A long line of cases was set out in the opinion of this court in the case of *State* v. *Haines*, 36 S. C., 504, supporting this view.   This court is committed by its decisions to the practice of the Circuit Judge in this case.

Second.  The next exception is that there was error in the refusal of the Circuit Judge to charge this request of defendant: "While it is true that the defendant is required to prove that he was of unsound mind at the time of the homicide, by the preponderance of the evidence, it is also true that upon the consideration of the testimony of the whole case, the State's as well as the defendant's, if any reasonable doubt remain in the mind of the jury, the defendant is entitled to a verdict of not guilty."   The judge's words following immediately after the reading of the request were: "Before going any further, I will state the general proposition of law, that when

the jury are informed by the testimony that the defendant has killed the deceased, and they know nothing else about it, the mere act of killing alone carries along with it the presumption of an unlawful intent, and would be sufficient to find a verdict of guilty, subject to qualifications that I will state later.'' The presiding judge, preliminary to passing upon the requests to charge, said: "So it is not only a question of soundness or unsoundness of mind before you, but the whole question of guilty or not guilty.'' And near the conclusion of the charge he had said: "The defendant is entitled to every reasonable doubt in this case, as in all other criminal cases—of every reasonable doubt.''

What is the object of a request to charge? Is it not to obtain an answer from the judge to the jury? This court holds parties to a cause to a just but rigid rule, in case they seek to allege failure in a judge to embody in his charge to the jury some feature of the law bearing upon the decision of the issues involved in the trial, for we will not consider any such complaint, unless a request to so charge was made and refused. Then, if that be so, and when they seek a charge from the judge, and he fails to indicate to the jury his opinion, clear cut, upon the propositions of law contained in the request, are we not bound to enforce this right? We would not for a moment hold, nor do we hold, that the judge is bound to adopt the language of the request, or answer in his charge exactly when the proponent of the charge would prefer, but the judge must respond to the request by declaring the proposition, if relevant to the issues involved, sound or unsound. The proposition of law here asked to be charged was sound law, and no doubt the presiding judge so believed. If so, he should have so charged the jury, and his failure to do so was fatal error.

We will next consider under one head, the 3d, 4th, 5th, and 6th exceptions. At the outset, we may as well remark that our adhesion to the principles of law laid down by this court on the plea of insanity, in the case of *State* v. *Bundy,* 24 S. C., 439, is unshaken, notwithstanding all the learned research of the appellant's counsel. The safety of society is too precious to be disregarded by courts. We fear counsel, in their

zeal for the cause of their client, have overlooked some of the safeguards placed by that decision upon the liability to punishment of persons under this plea. It is not simply the power to distinguish right from wrong, that is prescribed. It is the power to distinguish right from wrong *in the act itself*—to recognize that *the act complained of* is either morally or legally wrong. When this power exists in a defendant at the bar of a court, on trial even for his life, he must answer for his acts. Such is the law of this commonwealth.

The next exception, the 7th, we cannot sustain. The "Case" discloses that the Circuit Judge announced this as the request to charge made by the solicitor. When he submitted it to the jury, he was very careful to call their attention to the fact, that he was not to be understood as referring to the facts of the case on trial. No possible harm could have accrued to the prisoner therefrom.

Our attention will now be given to the 8th exception of appellant. This we must overrule. The meaning of the judge is very plain. He was defining malice, and after he had done so, he gave as an illustration of that definition as applicable to the charge against the defendant.

The 9th exception relates to the use of words: "This case is one of murder against the defendant, beyond all question the gravest offence known to the law." The appellant contends it was a charge upon the facts. We cannot so view it. The words are susceptible of a natural and just construction, utterly at variance with such an idea. Just after the judge had addressed the jury as "Gentlemen of the jury," these words occur. The case, as popularly understood, was the indictment, the charge, the prosecution. No jury would fail to understand it in that way. His words, used just afterwards, "beyond all question the gravest known to the law," fasten this meaning. This exception cannot be sustained.

Nor do we find any difficulty in overruling the 10th exception. When the language of the judge is construed as a whole, all difficulty vanishes. We have hitherto, in our decisions, pointed out the danger of selecting a sentence or part of a sentence in a judge's charge to show an error committed

by him. This is not just to the judge. Lastly, the 11th exception imputes error to the judge, in stating that the law does not excuse an assault and reduce it to manslaughter if a deadly weapon is used—a gun or a pistol, or anything of that kind. These words are only a part of the judge's remarks to the jury, when they came out of their room asking fresh instructions, stating their difficulty in finding as between murder and manslaughter. He explained and defined *murder, manslaughter, and self-defence.* When these words are construed as a part of the whole charge, in connection with its other parts, and also in connection with his previous charge, it will be manifest that no injustice resulted to the prisoner. We overrule this exception also.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and the cause remanded to the Circuit Court for a new trial.

MR. JUSTICE McGOWAN. I concur with Mr. Justice Pope. The defendant's second request to charge embodied a sound proposition of law. The Circuit Judge did not refuse to charge it, but he omitted to do so. This, I think, was error.

But, in my opinion, the defendant is entitled to a new trial upon the additional ground furnished by his 11th exception, as follows: "Because the Circuit Judge erred in charging that the law does not excuse an assault and reduce it to manslaughter if a deadly weapon is used—a gun or a pistol, or anything of that sort." Taken by itself, it seems to me that it cannot be maintained that this is a correct definition of manslaughter; and while it may be true that in other parts of his charge preceding this, the judge had more fully defined manslaughter, yet, under the circumstances in which the language appealed from was uttered, it could hardly fail to mislead the jury. The Brief shows that after the jury had had the case in charge in the jury room for ten or eleven hours, they came into the court room after midnight, and asked further instructions from the judge. Speaking by their foreman, they said: "We cannot agree as between murder and manslaughter, and wish some further instructions on that point." The judge then

defined murder, manslaughter and self-defence. The foreman, apparently not satisfied, then said: "That's just what's the matter with us. Suppose one of those jurors insults me, and I walk in that room and get a gun and shoot him down, would that be excusable?" To this hypothetical, but very pregnant, question, the judge replied: "No words, however aggravating, will justify or excuse an assault where a deadly weapon is used; but the apprehension of personal violence is a different thing. The law does not excuse an assault and reduce it to manslaughter if a deadly weapon is used—a gun or a pistol, or anything of that sort."

Considered in connection with the foreman's question, the judge's response, as it seems to me, can bear but one interpretation, viz., that where an assault with a deadly weapon results in homicide, it is murder and not manslaughter, and this irrespective of the circumstances under which the deadly weapon was used. This was said at the very close of the supplemental charge; *it was the last word*, and in response to the supposed case put. After hearing this, the jury might well have considered that the defendant, McIntosh, having used a deadly weapon in his assault on Newby, the only thing left for them to do was to find him guilty of murder, which they did, with a recommendation to mercy. The judge's charge, directly in response to their question, had substantially told them that such an assault *could not* be reduced to manslaughter. This definition was manifestly incomplete, for the reason, that it was directly in response, and limited, to a supposed case, and, therefore, misleading; leaving out, as it did, the necessary element of the provocation, which might cause the use of a deadly weapon, and which might, in law, mitigate the offence; such sufficient provocation as the law recognizes and deems necessary to reduce the offence from murder to manslaughter.

In this connection it may be said that the doctrine of sufficient legal provocation has been recognized by the courts of both England and America from the earliest times. See 1 East P. C., 238, 242. On this point Mr. Justice Wardlaw, in delivering the judgment of the old court in the case of *State v. Smith*, 10 Rich., 346–7, said: "In the case before us the judge,

speaking in reference to a homicide effected by a deadly weapon, so defined voluntary manslaughter as to require that sudden heat and passion should not only exist, but be excited by 'sufficient legal provocation'—be justly excited by legal provocation. No doubt was left, that the meaning was to require a provocation of that kind which the law deems necessary to mitigate to manslaughter the guilt of a party who, upon such provocation, has slain a human creature by the use of a deadly weapon; and to require, further, that such provocation should be somewhat proportionate to the punishment inflicted, or, as is often expressed, should be reasonably sufficient. There is no doubt that this was a just exposition of the law, and it would not be easy to select a more suitable phrase to express the required provocation so as to guard against vulgar error than that of sufficient legal provocation." Continuing, the learned judge says: "Deliberation and sufficient legal provocation are (in the report of the case being considered) respectively made to characterize murder and manslaughter, and using the terms in a strict technical sense, this is correct," &c.

There can be no doubt that this is sound doctrine. The use of a deadly weapon cannot of itself prevent a homicide from being reduced to manslaughter. There must also be the absence of hot blood, sudden heat and passion, and sufficient legal provocation. Had the Circuit Judge, in the case before us, so charged in response to the foreman's question, it is reasonable to suppose that the jury would have felt bound to consider, not simply the fact of the use of a deadly weapon, but the circumstances, if any there were, which provoked the defendant to use his gun, and whether such circumstances furnished sufficient legal provocation, such as would in law mitigate the guilt to manslaughter. In the record there is evidence tending to show the circumstances under which McIntosh seized his gun, which was at hand, and shot the deceased; Newby's violent conduct at the breakfast table—breaking dishes with a dipper; his threat, when remonstrated with, that he would "break up McIntosh in the same way;" his following McIntosh, who had quietly left the room; his approaching McIntosh while he had a gun in his hand; his still advancing after the first and

missing shot had been fired.   Under the judge's final charge, all these and other circumstances were practically withdrawn from the consideration of the jury; under the instruction as to an assault with a deadly weapon, the jury were in effect told that, no matter what the circumstances or what the provocation, a fatal assault with a deadly weapon is murder, and can not be manslaughter.   The parties were good friends.   There was not in the case the remotest intimation of malice from old grudge or other cause, but it was a sudden affray; and, therefore, while concurring with Mr. Justice Pope, I have no hesitation in holding that the defendant's eleventh exception should be sustained, and a new trial granted on that ground also.

MR. CHIEF JUSTICE MCIVER, *dissenting.*   While I concur in the conclusions reached by Mr. Justice Pope as to all the other grounds of appeal, I cannot agree with him in the view which he takes of the second ground.   That ground is taken in these words: "Because the Circuit Judge erred in refusing to charge the jury as requested in defendant's second request to charge;" and that request was couched in the following language: "While it is true that the defendant is required to prove that he was of unsound mind at the time of the homicide by the preponderance of the evidence, it is also true that, upon the consideration of the testimony of the whole case, the State's as well as the defendant's, if any reasonable doubt remain in the mind of the jury, the defendant is entitled to a verdict of not guilty."

An examination of the judge's charge will show that, after making some general observations designed to direct the minds of the jurors to the distinctions between the different grades of homicide, he took up the several requests to charge, and after reading them to the jury, made such comments upon them as seemed to him proper.   But when he read this second request to charge, the idea seems to have occurred to him that he had omitted, in his general observations, a remark which he regarded as appropriate to the case; and, therefore, without saying anything *at that time* in response to the second request, he proceeded to make such general observations which is not

15—39

pertinent to the present inquiry. Now, if that was all that appears in the charge, in reference to the proposition involved in the second request, I would be inclined to hold, in a case involving such grave consequences as this does, that while the Circuit Judge did not *refuse* to charge as requested, his *omission* to do so, after such request, would be error.

But that is not all that appears in the charge in reference to the proposition involved in the second request; for, after going over the several requests, the Circuit Judge, at the conclusion of his charge, used this language: "Gentlemen, I believe I have gone over this whole case. That question of unsoundness of mind is for you entirely. The defendant is entitled to every reasonable doubt in this case as in all other criminal cases—of every reasonable doubt." When this language was used to the jury it does not seem to me that they could fail to understand that if upon a review of all the testimony in the case, as well that adduced by the State as that offered by the defendant, they entertained a reasonable doubt as to any material fact in the case, they must give the accused the benefit of such doubt. When, too, it is seen that the defendant's plea was interposed in these words: "Not guilty, by reason of unsoundness of mind at the time of homicide;" that a very large portion of the testimony was directed to the issue of insanity, as well as a considerable portion of the judge's charge, I do not see how it is possible to doubt that the jury were made to understand fully, that if they entertained a reasonable doubt as to the sanity of the accused at the time the homicide was committed, they were bound to acquit him; and that, as it seems to me, was the whole point of the second request, which was, in my judgment, substantially charged.

It is conceded, as I understand it, and properly conceded, that a Circuit Judge is not bound to charge a request precisely at the time, or in the phraseology in which it is presented; but if it embodies a correct proposition of law, it is quite sufficient if such proposition be presented to the jury at any stage of the charge. Here, when near the conclusion of the charge, the jury were instructed, that the question of insanity "is for you entirely," and in the same connection, immediately after-

wards, that "the defendant is entitled to every reasonable doubt in this case as in all other criminal cases—of every reasonable doubt," it seems to me that the proposition embodied in the second request was much more effectively presented to the jury than if the judge had, upon reading the request, simply said, "I so charge you."

I am, therefore, of opinion that the judgment of the Circuit Court should be affirmed.

Judgment reversed.