7268

## STATE v. DANIEL.

1. **APPEAL.**—IN A CRIMINAL CASE, the doubt whether an important point was made in a motion to dirert a verdict will be solved in favor of defendant.
2. **CHARGE OF OBTAINING MONEY BY FALSE PRETENSES** is not sustained by proof of obtaining the satisfaction of an obligation for money used in a mercantile business at a certain per cent. by the sale of an interest in the business by falsely representing the value of the business.

Before MEMMINGER, J., Spartanburg, January, 1909. Reversed.

Indictment against R. E. Daniel and E. L. Oulla. From sentence, defendants appeal.

*Messrs. John Gary Evans, R. K. Carson* and *J. W. Nash,* for appellants, cite: *What constitutes the offense:* 77 S. C., 291; Clarke's Crim. L., 281; 12 Ency., 824; 83 Am. Dec., 721; 19 Cyc., 393; 10 L. R. A., 302. *Money was not paid at time of purchase of interest in the business:* 58 N. E., 378; 82 N. E., 261; 58 S. E., 1068; 89 Pac., 295; 26 Kan., 123; 58 S. E., 304; 77 S. C., 98, 289; 103 N. W., 251; 20 Wis., 217; 91 Am. Dec., 390; 2 Bish. Cr. L., 415; 11 Ohio, 669; 31 Ohio, 314; 8 N. E., 432; 14 Wend., 546; 28 Am. Dec., 530; 6 Lanc. L. Rev., 121; 8 Penn., 260; 15 Ia., 412; 37 Ark., 445; 40 Am. R., 103; 22 Sup. Ct. C. T. R. Penn., 348; 47 Ia., 142. *Obtaining money from a partner to go into the business does not come under the statute:* Bell's Crown Cas., 348. *Prosecutrix never parted with title to the money:* 19 Cyc., 408; 28 Tex. App., 447; 103 N. W., 257.

*Solicitor J. C. Otts* and *Mr. C. P. Sims,* contra. *The Solicitor* cites: *Nature of representation implies parties knew its falsity:* 23 S. C., 173; 44 S. C., 325.

July 30, 1909. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The defendants were convicted of obtaining money under false pretenses at the January, 1909, term of the Court of General Sessions for Spartanburg county. At the close of the evidence for the State, defendants' counsel requested the Court to instruct the jury to acquit the defendants; and after conviction they made a motion for a new trial, on the ground that there was a total failure of evidence to sustain the charge made in the indictment. Justice to the Circuit Court requires us to say that the point on which we think the case turns was not distinctly presented in the request for the direction of a verdict of acquittal. Rule 77 of the Circuit Court requires: "The point that there is no evidence to support an alleged cause of action shall be first made, either by motion for nonsuit or a motion to direct the verdict; and the point that there is no evidence to support a defense shall be first made by motion to direct a verdict." This rule was adopted to prevent the waste of time of the Courts, which results from deferring the consideration of the points mentioned in the rule for presentation to the Court on motions for new trials. As this is a criminal cause, involving the liberty of citizens, the doubt as to whether the important point about to be discussed was made under the motion to direct a verdict will be solved in favor of the defendants.

The statute on which the indictment rested enacted: "Any person who shall, by any false pretense or representation, obtain the signature of any person to any written instrument, or shall obtain from any other person any chattel, money, valuable security or other property, real or personal, with intent to cheat and defraud any person of the same, shall be guilty of a misdemeanor, and shall, on conviction, be sentenced to pay a fine not exceeding five hundred dollars, and undergo an imprisonment not exceeding three years." Criminal Code, sec. 168.

The indictment charged: "That R. E. Daniel and E. L. Oulla, on the first day of January, in the year of our Lord one thousand nine hundred and eight, with force and arms, at Spartanburg courthouse, in the County of Spartanburg and State aforesaid,, unlawfully and knowingly devising and intending to cheat and defraud M. E. Looper of her goods, moneys, chattels and property, did then and there unlawfully, knowingly and designedly falsely pretend to her that the Oulla Furniture Company as a business was worth eighty-one hundred dollars over all debts and liabilities, and was then and there paying one hundred dollars per week profits on cash sales, and in addition thereto was making a large sum on the installment business; whereas, in truth and fact, the said furniture business was not worth anything above its debts and liabilities, and said business was not paying any profit on cash business; in addition thereto was making nothing on its installment business; as they, the said R. E. Daniel and E. L. Oulla, then and there well knew to be false; by color and means of said false pretenses they, the said R. E. Daniel and E. L. Oulla, did then and there unlawfully, knowingly and designedly obtain from the said M. E. Looper two thousand five hundred dollars, lawful money of the United States, of the value of two thousand and five hundred dollars, being then and there the property of the said M. E. Looper, with intent to cheat and defraud the said M. E. Looper, to the great damage of the said M. E. Looper."

In deciding whether the Circuit Court was in error in refusing to direct a verdict for a total failure of evidence to sustain the charge made in the indictment all the testimony must be taken most strongly against the defendants. Viewing the evidence in that way, these facts appear: The prosecutor, Mrs. Looper, in July, 1907, at the suggestion of the defendant, Oulla, turned over to him the sum of twenty-five hundred dollars to be used in a furniture business in which both the defendants were interested. When testify-

ing as to the arrangement under which this money was held, Mrs. Looper said the defendants were to pay her "ten per cent. and so much profit on what they made." This statement admits of no other meaning than that Mrs. Looper, when she turned over the money to Oulla, parted with the title to the money as well as its possession, for otherwise Oulla could not have earned the ten per cent. and share of the profits which he had contracted to pay to Mrs. Looper for the use of the money. It is true that Oulla testified that Mrs. Looper did not determine how the money should be disposed of until 1st January, 1908. But it is perfectly clear that he did not mean by this to contradict Mrs. Looper in her statement that he was to use the money and pay her for the use from the time he received it.

There is not a particle of evidence that there was any false pretense or representation on the part of either of the defendants inducing Mrs. Looper to turn the money over to Oulla in July, 1907. On the contrary it is manifest from the record, indeed, it was so stated by counsel for the State, that the charge of obtaining money on false pretenses, as made in the indictment, must stand or fall on a transaction by the defendants with Mrs. Looper, which took place long afterwards—that is, on the first day of January, 1908.

Mrs. Looper testified that the defendants, on the first day of January, 1908, represented to her that the business "was a good paying business and all right;" "that it was a paying business, and had been paying one hundred dollars a week;" that one-third of it was worth $2,700, and by these representations induced her to purchase a third interest at that price. The purchase price, $2,713.54, according to the contract was made up by the cancellation of the debt of $2,500, due either by Oulla or by Oulla and Daniel to Mrs. Looper, and by her obligation for the remainder.

No money passed in this transaction, and it is, therefore, impossible to sustain the conviction of obtaining money under false pretenses. Mrs. Looper had long before parted

with her money in a transaction which we must assume, in the absence of any testimony to the contrary, to have been fair; and when she was induced to purchase a one-third interest in the business, she had in the place of the money only the debt due to her for it. There was not even evidence that the money was in the hands of the debtor or debtors, or in a bank to their credit. On the contrary, the evidence leaves no doubt that if Mrs. Looper had demanded payment in money, neither Oulla nor Oulla and Daniel could have paid it except by negotiating a loan.

It is elementary that proof of the larceny of a note or other obligation given for money will not support a conviction under an indictment charging the larceny of money. So also it is manifest that the difference between a debt or obligation for money and the money itself is so substantial that proof of the obtaining of the satisfaction of the debt by false pretenses will not sustain a conviction under an indictment charging the obtaining of money by false pretenses.

In *Hunt* v. *State,* 72 Ark., 241, 79 S. W., 769, 105 Am. St., 34, 65 L. R. A., 71, proof of obtaining a check on which the bank paid the money was held to be not a fatal variance in a trial for obtaining money under false pretenses. In that case the Court well says: "It would be carrying a technicality to a most dangerous extreme to hold that proof of the mere instrumentalities of obtaining the money constituted a variance with the charge of obtaining the money itself, where the same evidence also showed the fact of obtaining the money itself." The same principle was applied in *People* v. *Lammerts* (N. Y.), 58 N. E., 22; *Schaumloeffel* v. *State* (Md.), 62 Atl., 803; *People* v. *Hoffmann* (Mich.), 105 N. W., 838; *State* v. *Palmer* (Kan.), 20 Pac., 270; *State* v. *Gibson* (Ia.), 106 N. W., 270. But all these cases rest on the ground that as an ultimate fact the money was obtained, the check being only a means of obtaining it.

We think no authority can be found which holds that the charge of obtaining money by false pretenses is sustained by proof of obtaining the satisfaction of a debt by the false representation of the value of the property given in satisfaction. On the contrary, the doctrine is laid down in Bishop on Criminal Law, sec. 394, that merely getting credit on a debt is not obtaining property under false pretenses within the meaning of the statute.

As the judgment must be reversed because of this fatal variance between the offense charged in the indictment and the evidence offered, consideration of the other exceptions is unnecessary.

The judgment of this Court is that the judgment of the Circuit Court be reversed.