## 7753

## STATE v. JACKSON.

1. PLEADINGS.—AN INDICTMENT charging a defendant by his initials is sufficient where he is in the habit of using only the initials and is known by them, where the record makes plain the identity of the accused.

2. CIRCUIT JUDGE—CHARGE.—The duty is imposed by the Constitution on the trial Judge to guard against questions or remarks during trial which may so influence the jury as to make him a participant in their findings. *Here* it is *held* the questions by the Court of the witness and his remarks to him were not violative of this rule.

3. PLEADINGS—INDICTMENT.—That a defendant procured a check under false pretenses and collected the money therefor will support an allegation in an indictment charging him with obtaining that amount of money under false pretenses.

4. THE DEFENSE OF INSANITY does not in every case import an admission of the act committed. But in view of the fact that the defense relied on the act charged as tending to show insanity, an instruction that this plea admitted the act is harmless error.

5. INSANITY.—The test of insanity is mental capacity or the want of it sufficient to distinguish moral or legal right from moral or legal wrong and to recognize the particular act charged as morally or legally wrong.

6. CHARGE—FALSE PRETENSES.—Where the Court had charged again and again that the element of fraud was essential to the crime of obtaining money under false pretenses, it is not error to refuse a request that if defendant obtained the money and did so with the intention of returning the same without a fraudulent intent, he would not be guilty.

Before SEASE, J., Sumter, October, 1909.   Affirmed.

Indictment against E. A. Jackson for obtaining money under false pretenses.   Defendant appeals from sentence.

*Messrs. J. B. McLaughlin* and *John H. Clifton,* for appellant.   Oral argument by Mr. Clifton.

*Solicitor P. H. Stoll* and *L. D. Jennings,* contra.   Mr. Jennings cites: *Insanity is an affirmative plea:* 10 Ency. P.

& P. 1215 ; 92 Mo. 300. *Instruction as to degree of insanity correct:* 39 S. C. 109.

January 7, 1911. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The defendant E. A. Jackson was convicted and sentenced under an indictment which charged that he, "devising and intending to cheat and defraud J. H. Cunningham of his goods, moneys, chattels and property, unlawfully, knowingly and designedly, did falsely pretend that he, the said E. A. Jackson, then and there had a car of lumber containing nine thousand feet of two by ten by twenty-four lumber of the value of eighty-six dollars, which said pretense the said E. A. Jackson then and there well knew to be false, by color and means of which said false pretense and pretenses, he the said E. A. Jackson did then and there unlawfully, knowingly and designedly obtain from the said J. H. Cunningham eighty-six dollars * * *."

The record set out a number of grounds on which counsel for defendant demurred to the indictment; and the first exception assigns error in the refusal of the Circuit Court to sustain the demurrer. All these grounds except one are entirely nonrelevant to the indictment in this case for obtaining money under false pretenses, and clearly refer to some other indictment against the defendant for the forgery of a bill of lading. For this reason any detailed statement or consideration of them would be entirely out of place here.

The only ground of demurrer which can be referred to this indictment is "that the defendant has not been indicted and that there is no present indictment against Edward Arthur Jackson, and that nowhere in the indictment does it appear that the defendant in his own proper person and name has been indicted or that he has committed any manner of offense." The general rule of the

common law was that an indictment describing the defendant by his initials instead of his full Christian name was insufficient.   But the rule is a very technical one; and so it was held in *City Council* v. *King,* 4 McC. 487, that the initials would be sufficient if the defendant was in the habit of using only initials for his Christian name and was known by them.   No doubt the better practice is to write the full Christian name, but a judgment should not be reversed when only initials are used in a case like this where the record of the trial makes plain the identity of the accused.

The evidence offered in support of the charge in the indictment tended to prove that the defendant, by falsely representing that he owned a car load of lumber and by turning over to J. H. Cunningham a forged bill of lading, obtained from Cunningham a check for eighty-six dollars which upon presentation by the indorsee was paid by the bank on which it was drawn.   There is no support whatever for the statement in the third exception that the Circuit Judge undertook to decide the issue of payment by saying in the course of the examination of the witness Yates, "I think that is enough.   The check has been proved to have been paid."   It was in sustaining an objection of defendant's counsel to a question of counsel for the State that the Court said, "I think that is enough."   The record does not indicate that the Court said anything as to the payment of the check.

The general allegation of prejudicial error in the participation of the Circuit Judge in the examination of the witnesses is thus set out in the fourth exception: "That his Honor erred and prejudiced the case of the defendant, and intimated and conveyed to the jury his belief as to the facts by the examination and cross-examination of the witnesses Doctors Dwight, China and Kirk and Saunders and others for the defendant, in that such examination and cross-examination conveyed to the jury the opinion and belief of the trial Judge as to the truth-

fulness of the statements made by the witnesses for the defendant, as to their correctness, and as to the weight the same should have received from the jury, and in that such examination did not bring out the testimony fairly and impartially, but upon the contrary brought it out unfairly and prejudicially to the defendant, as follows." Numerous questions and observations of the Judge are then set out as indicating to the jury that the opinion of the Judge was adverse to the defendant.

There can be no doubt of the right and the duty of the Circuit Judge to ask such questions of witnesses as seems necessary to elicit the evidence relevant to the decision of the issue on trial. Yet so great is the weight which a jury attaches to an intimation of opinion coming from one set apart to preside over the Court because of his impartiality and capacity to decide justly, that the duty is ever present to a Judge to guard against questions or remarks that may so influence the jury as to make the Judge a participant in their findings of fact. This duty is imposed by the Constitution and a departure from it tending to affect the decision by the jury of a material issue of fact must result in a new trial. *Willis* v. *Telegraph Co.,* 73 S. C. 379, 53 S. C. 639; *Latimer* v. *Electric Co.,* 81 S. C. 374, 62 S. E. 438; *State* v. *Driggers,* 84 S. C. 526, 66 S. E. 1042.

There are in the record two remarks of the Circuit Judge which seem on their face so near to the line of constitutional prohibition that they require attention. In the redirect examination of the witness George Saunders, the following appears: "I understand you to say that right and wrong would not seem to him like it would to a sane man? No, sir.

"Court: Would you say that it appeals to him as strong as to you or somebody else? Do you think he knows right from wrong? In some instances, I don't think the enormity of these things appeals to him.

"Court: In other words he hasn't a high sense of honor as to them? I don't think he knows as much about them. I should think he knows—

"Court: Do you mean to say all men are insane who are accused of crime? By no means. I say I don't think a sane man would do the things he is accused of.

"Court: Yet the penitentiary is full of them? I think so."

There is apparent force in the argument that this was an intimation from the Court that in the due administration of law, men who had done just the things which were relied on here as showing that the defendant was insane had been sent to the penitentiary as sane men. But the argument fails in view of the fact that the witness himself had testified that the defendant in his opinion was sane according to the laws of this State; for he had testified to his belief that the defendant knew that the things he had done were wrong. The remark of the Circuit Judge therefore in effect was that many men such as the witness described the defendant to be—eccentric and acting unreasonably and yet knowing right from wrong—had been held responsible and subject to punishment. This was nothing more than a statement of the law of the State.

The other matter to be noticed is the comment of the presiding Judge on the evidence of Doctor Dwight. The witness, in answer to a question by the Court as to the mental capacity of the defendant at the time charged in the indictment as the date of the crime, had said: "My opinion is that he was liable to do—liable to do a criminal act and not realize the gravity of it, and I base that on a chain of circumstances, starting with the family history." On the cross-examination, in answer to a question whether in his opinion the defendant knew at the time alleged that it would be wrong to do acts such as were charged in the indictment, witness answered, "I cannot tell you. That is a momentous question." Then the following appears in the record of the redirect examination:

"Q. Is it your opinion that six months ago or longer this man was suffering from some form of insanity, *dementia* or disorder of the mind and would not have known right from wrong? A. I have given it four or five times.

"Court: Is it your opinion that in May he did not know right from wrong? A. I said that.

"Court: You are a good long time to say he did.

"Mr. Clifton: I beg your pardon. He said it in chief.

"Court: It took him a long time to answer me. He didn't answer me that way."

When these remarks of the Judge are taken out of their connection they have the appearance of unfairness. Viewed in the connection just stated from the record it is manifest that the remark of the Judge had no significance beyond an admonition to a witness who had by hesitation and indefiniteness consumed much of the time of the Court before giving a definite opinion as to the sanity of the defendant.

The other remarks of the Circuit Judge quoted in the exceptions and alleged to be improper do not require special mention. They are either perfectly fair questions propounded to elicit the truth, or unobjectionable statements of reasons for excluding or admitting testimony.

Neither the testimony nor the objections of the defendant's counsel give any support to the exception alleging error in "permitting the witnesses for the State in reply to give their opinion as to the insanity or sanity of the defendant upon a single transaction standing alone."

The point was earnestly pressed in the argument that the Court excluded all evidence tending to show insanity of the defendant at the time of the trial; but careful scrutiny of the record does not show that any testimony offered on this point was excluded. At the request of defendant's counsel the jury were instructed: "That if they find that the defendant is not guilty by reason of being proved at this trial that he is *non compos mentis,* that under the statute law of this State the Judge is empowered and authorized to

make an order committing him to the State Asylum for Lunatics."

As we understand, the seventh exception depends on the position that the defendant could not be convicted of obtaining from J. H. Cunningham by false pretenses eighty-six dollars in money when the evidence introduced by the State showed that Cunningham had given defendant a check for eighty-six dollars on which the money was subsequently paid. The question is settled by *State* v. *Daniel,* 83 S. C. 307, 65 S. E. 236, where it is held that such a distinction is too technical and unsubstantial to be sustained.

The next exception is more serious. At the beginning of the charge the Circuit Judge instructed the jury very plainly that it devolved on the State to prove beyond a reasonable doubt all the essential elements of the offense charged —the known false representation as to an existing or past fact with the intent to defraud the person named in the indictment and actually inducing him to part with his money. But in charging on the defense of insanity the following instruction was given: "While the plea of insanity is an affirmative plea in cases of this kind, I cannot charge you that he admits the offense, because in the offense the gist of the offense is the intention to defraud, which involves a mental operation which an insane man is not capable of exercising, a man who does not know right from wrong is incapable of exercising. In murder cases a man sets up the plea of insanity that is what is known as an affirmative plea, and it admits the killing under the law, admits the killing but does not admit that it was the crime; admits the killing, and the burden is upon him to show by the preponderance of the evidence that he was insane at the time. A plea of insanity does not admit the offense charged, the crime charged, but it admits under the law that the act was committed, but does not admit that the act was a crime."

It is not true that in every case the defense of insanity imports an admission of the act committed. The accused may well say: "I deny doing the act charged—I have no recollection of it, but even if I did it, I was at that time entirely irresponsible because of insanity." In such a case there is no admission of the act, but it must be proved as alleged; and the accused is entitled to the benefit of any doubt as to the sufficiency of the evidence. Insanity was set up as a defense in *State* v. *Paulk,* 18 S. C. 514, and yet the Court held that the State must prove all the essential elements of the crime. But there are cases where the entire record shows plainly that the act described as criminal is in fact admitted. It would in such cases be manifestly absurd to order a new trial on the ground that the Circuit Judge had erroneously charged as a matter of law that the plea of insanity itself was an admission, where the record shows as a matter of fact that the defense was based on an admission that the act was done. Such is this case. The entire testimony on the part of the defendant was directed to the defense of insanity, and the basis of the defense was that the doing of the act charged—obtaining the money of Cunningham by the false pretense—and other similar acts, together with the indifference of the defendant to the threatened consequences was proof of insanity. It would be absurd to say that the defendant was entitled before the jury to the benefit of a denial of the act of obtaining the money from Cunningham, and also to rely on the fact that he did obtain it in support of his plea of insanity. It follows that in this case, the error of charging as a legal proposition that the plea of insanity admits the acts charged was harmless since the defendant admitted the act by relying on it as one of the evidences of insanity.

There is no ground for the exceptions alleging error in the definitions of insanity given to the jury. Under the law of this State, the test is mental capacity or the want of

it sufficient to distinguish moral or legal right from moral or legal wrong, and to recognize the particular act charged as morally or legally wrong. *State* v. *Bundy,* 24 S. C. 439; *State* v. *Alexander,* 30 S. C. 94, 9 S. E. 266; *State* v. *McIntosh,* 39 S. C. 97, 17 S. E. 446. The Court explicitly so instructed the jury.

The Court adopted the first sentence but refused to charge the italicized portion of the following request: "The jury are further instructed that the essence of the alleged offense is the intentional cheating and defrauding of another, by knowingly making a false pretense. *So if you conclude that the defendant did obtain money and did so with the intention of returning the same without a fraudulent intent, he would not be guilty."* The Court had again and again charged that the element of fraud was essential to the crime charged; and the rejected sentence was confusing in that it might have been thought by the jury to mean that the defendant could not be convicted even if he obtained the money by a false pretense with a fraudulent intent to deprive the owner of it and convert it to his own use, if he had the purpose at some time in the future to return it.

The other exceptions were not relied on and they are too hypercritical to require special notice.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.