14304

STATE v. CODY

(186 S. E., 165)

January, 1936..

*Mr. C. L. Cody* acting in own defense,

*Mr. H. C. Blackwell, Solicitor,* for the State.

June 5, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The defendant-appellant, C. L. Cody, was tried and convicted in the Court of General Sessions for Greenwood County of a breach of trust with a fraudulent intent. He was not represented by counsel, but acted for himself in the lower Court, and has submitted a brief in his own behalf to this Court. The defendant offered no testimony upon his trial.

At the close of the evidence for the State, the defendant requested the Court to instruct the jury to render a verdict of acquittal, on the ground that

there was a total failure of evidence to sustain the charge made in the indictment. The motion for the directed verdict made by the defendant, who is not a lawyer, is not couched in the usual legal phraseology, but it sufficiently states the grounds which make the issue. As this is a criminal case, involving the liberty of a citizen, the doubt, if there is a doubt, as to whether this important point was properly made, will be solved in favor of the defendant. *State v. Daniel,* 83 S. C., 309, 65 S. E., 236, 237.

The statute on which the indictment rested provides (Section 1149, 1932 Code) : "Any person committing a breach of trust with a fraudulent intention shall be held guilty of larceny; and so shall any person who shall hire or counsel any other person to commit a breach of trust with a fraudulent intention."

The indictment charges that C. L. Cody, on the 8th day of October, 1935, did willfully and unlawfully commit a breach of trust with fraudulent intention, in that he, being intrusted by Nannie O. Benjamin with the care, keeping, and possession of Brandon Mill stock, of the value of $110-.00, such stock being her property, did willfully, unlawfully, and feloniously take and appropriate the said Brandon Mill stock to his own use and purpose, with the intention of cheating and defrauding the said Nannie O. Benjamin of the same.

In deciding whether the Circuit Court was in error in refusing to direct a verdict on the ground that there was a total failure of evidence to sustain the charge made in the indictment, all of the testimony must be taken most strongly against the defendant. Viewing the evidence, in this light, these facts appear:

The appellant, in September, 1934, was conducting a business in the City of Greenwood under the name of Cody's Collection Agency. During the latter part of that month he employed the daughter of the prosecutrix, Miss Mary Benjamin, as his stenographer, and agreed to pay her a

monthly salary of $48.00. He told her that her duties would involve the handling of money, and required that she deposit with him the sum of $10.00 with which to buy a $1,-000.00 surety bond, conditioned for the faithful performance of her work. She thereupon gave him the money for this purpose. In a few days he informed her that he was unable to secure a surety bond, but that, if she would put up an additional sum of $15.00, he would hold the amount ($25-.00) as a bond in lieu of a surety bond. The young lady was unable to raise this additional amount of cash. However, following a conference with her mother, who owned the Brandon Mill stock referred to in the indictment, Mrs. Benjamin agreed with the defendant that he should hold the stock as a bond for the faithful performance by her daughter of her duties as his stenographer.

This agreement was reduced to writing, and at the trial of this case was introduced in evidence by the defendant while the prosecutrix was on the witness stand. The contract was drawn by the defendant, and, while somewhat garbled in its terms, and while it abounds in the repetition of "Party of the First Part" and "Party of the Second Part," it provides in substance that the stock is to be held as a bond, and that the defendant shall have the right to "transfer said stock in the transaction of his business; obtain a loan on the same, and or dispose of at the discretion of the party of the first part (defendant)," etc. This contract was executed on October 5, 1934. Within a few days thereafter Mrs. Benjamin and the defendant entered into what might be called a confirmatory oral agreement, whereby, upon his suggestion, she authorized him to sell the stock, and hold the proceeds of sale in lieu thereof as a bond. She testified repeatedly that she gave him the privilege to sell it. She further stated that the stock was placed in the hands of the defendant for him "to obtain a loan or get money on it," and this money was to be held as a bond to safeguard the defendant for the honesty, integrity, and faithful performance of the duties of her daughter while working for Cody's

Collection Agency. This testimony is reiterated in the record by Mrs. Benjamin, to the effect that the defendant had her unqualified authority to sell the stock and to hold the money in place of the stock as a bond.

The defendant sold the stock, and the prosecutrix testified that she knew that he had sold it; that her daughter, who was working for him as his stenographer, also knew that it had been sold, but that they said nothing to him about it. The following week the defendant disappeared from Greenwood. A warrant was then taken out for his arrest, sworn to by Miss Benjamin, charging him with the fraudulent appropriation of the original sum of $10.00, which she had placed in his custody for the purpose of purchasing a bond. This warrant, however, was not served until twelve months later, when the officers of the law located the defendant in the City of Greenville, where he was operating a turkish bath establishment under the name of Dr. Singletary. He was arrested and brought back to Greenwood, where he was placed in jail. While in jail, on October 22, 1935, a warrant was issued, sworn to by Mrs. Benjamin, the prosecutrix, which, in the phraseology of the magistrate who wrote the warrant, charged that the defendant "did obtain Brandon Mill Stock from deponent to hold as security for bond for Miss Mary Benjamin until he could get said bond and sold said bonds (stock) and failed to get bond, and appropriated the amount $110.00 to his own use with fradulent intent."

But it is to be noted that the indictment upon which the defendant was tried does not charge the fraudulent appropriation of the sum of $110.00, which was the proceeds derived from the sale of the Brandon Mill stock. The indictment charges that the defendant, being intrusted with the Brandon Mill stock, did willfully, unlawfully, and feloniously appropriate same to his own use and purpose, with the intention of cheating and defrauding the prosecutrix.

The testimony of Mrs. Benjamin admits of no other meaning but that she fully authorized the defendant to sell and dispose of this stock with which she had intrusted him. There is not a particle of testimony to the contrary.

The rule is anounced in 20 C. J., 431, that, "where an agent with authority to sell property in his possession, does sell it as such agent, a subsequent conversion of the proceeds of the sale is an embezzlement of such proceeds, and not of the property sold. And this has been held to be the rule, even where the agent sells the property with the intent fraudulently to convert the proceeds."

And we believe that this quotation correctly expresses the general law.

The Circuit Court's refusal to direct a verdict for the defendant in *State v. Daniel, supra,* a prosecution for obtaining money under false pretenses, was held to be reversible error, where the only evidence to sustain a conviction was that the defendant had obtained the satisfaction of a debt by a false representation of the value of the property given in satisfaction. The Court said: "It is elementary that proof of the larceny of a note or other obligation, given for money, will not support a conviction under an indictment charging the larceny of money. So also it is manifest that the difference between a debt or obligation for money and the money itself is so substantial that proof of the obtaining of the satisfaction of the debt by false pretenses will not sustain a conviction under an indictment charging the obtaining of money by false pretenses."

The converse of this proposition is presented in the case at bar, but the same principle applies. Here the indictment does not charge breach of trust in connection with the larceny of money, but specifically charges the fraudulent appropriation of certain mill stock, which it is admitted the defendant had the unequivocal right to sell for the prosecutrix.

The testimony in this case is directed wholly to proving that the defendant breached his trust fraudulently by ap-

propriating the proceeds of sale, which upon reason and authority is an entirely different offense from that of the appropriation of the stock, as charged in the indictment.

The trial Judge in his charge to the jury confined his instructions to the specific charge made in the indictment. He charged: "What does it take to constitute that offense? To begin with, it must be shown beyond a reasonable doubt that the property described here, that stock, was entrusted to him as an agent or trustee; some fiduciary relationship must be shown. The contention of the State is that it was entrusted to him for a certain purpose, namely to stand as a bond for the faithful performance of the duties of Mrs. Benjamin's daughter, and that when he took it for that purpose he occupied the relationship of agent, and was to hold it for that purpose and that purpose only. If it is shown beyond a reasonable doubt that is true, did he misappropriate that stock? That must be shown beyond a reasonable doubt. Did he do it with a fraudulent intent? The intent here is one of the important elements of the crime charged, with a fraudulent intent. The statute declares that a breach of trust with fraudulent intent is larceny, stealing."

We think no authority can be found which holds that the charge of breach of trust with fraudulent intention relating to the unlawful conversion of mill stock is sustained by proof of a breach of trust with a fraudulent intention relating to the subsequent conversion of money, the proceeds derived from the sale of the stock.

In all criminal prosecutions, the defendant has a constitutional right to be informed of the accusation against him; and it is a rule of universal observance in administering the criminal law that a defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment. It would be contrary to all rules of procedure, and violative of his constitutional right, to charge him with the commission of one crime and convict him of another and very different one. He is en-

titled to be informed of the accusation against him, and to be tried accordingly. *State v. Harbert,* 185 N. C., 760, 118 S. E., 6.

The state must prove the exact trust which has been ▪ breached. The testimony tends to establish that the trust which the defendant breached and violated was the obligation to hold the sum of $110.00 as a bond, and that, instead of doing so, he fraudulently appropriated the money to his own use.

But the indictment alleges that the trust which he breached was the obligation to hold certain personalty, Brandon Mill stock, as a bond, and that, instead of doing so, he fraudulently appropriated the mill stock to his own use.

It is manifest that these are two separate and distinct offenses. They are not the same in law or fact, and involve different acts of wrongdoing. Proof of one does not prove the other or warrant a conviction therefor.

This point is emphasized in the case of the *State v. Green,* 5 S. C., 65, where the indictment charged that the defendant, being intrusted with certain lumber upon a trust that he would safely keep the said lumber, fraudulently appropriated it, etc., but the proof as to the trust was that the defendant was employed as an overseer on two plantations, and that it was his "duty * * * to run a mill upon the lower of the two plantations, by sawing lumber cut on the place, and shipping it to market for sale." After conviction and sentence he appealed, and the Court said: "A more glaring difference between the allegation in the indictment and the proof, in this particular, could not well be conceived. It can in no way be regarded as an immaterial averment, for to establish the breach of trust contemplated by the Act, the circumstances constituting it must be correctly set forth, and if sufficient to establish the charge, must be proved as laid. The trust averred was safely to keep the lumber; the trust proved was to saw and ship to market for sale. The allegation in the indictment was not

sustained by any evidence, and until the trust charged in it was established by testimony there could be no breach of it."

And to the same effect see *State v. John Rushing*, 2 Nott & McC., 560, and *State v. Jenkins*, 20 S. C., 351, where it is held that the testimony in all cases must correspond with the allegations made, and especially so in criminal cases.

The cases illustrating the general rules in respect to variance between the indictment and the proof in criminal cases afford interesting analogies of the strictness with which the Courts in general require the proof to conform to the allegations in the indictment in criminal cases. See *State v. Copeland*, 46 S. C., 13, 23 S. E., 980; *State v. Council*, 58 S. C., 368, 36 S. E., 663; *State v. Hamilton*, 77 S. C., 383, 57 S. E., 1098.

In our opinion, the trial Court should have directed a verdict of acquittal for the defendant upon the charge set forth in the indictment. It therefore follows that the present verdict should be set aside and the action dismissed. This, however, does not prevent a conviction upon another bill charging the defendant with breach of trust with fraudulent intention with reference to the conversion of the proceeds derived from the sale of the Brandon Mill stock, if guilt be established.

During the course of the trial, the presiding Judge asked several questions of the prosecuting witness, Mrs. Benjamin, and the appellant alleges that these were leading questions which were calculated to influence the jury to such an extent as to make the trial Judge a participant in the verdict. Tested by the principles stated in the cases of *State v. Furtick*, 147 S. C., 82, 144 S. E., 839, 84 A. L. R., 1164, and *State v. Mitchum*, 150 S. C., 341, 148 S. E., 184, there is no merit in the exception raising this question.

For the reasons herein stated, the judgment of this Court is that the judgment of the Circuit Court be reversed.

Mr. Chief Justice Stabler and Messrs. Justices Carter, Bonham and Baker concur.