19336

The STATE, Respondent, v. Harold Raymond TUCKNESS, Appellant
(185 S. E. (2d) 607)

*Messrs. Sol E. Abrams* and *C. Robert Faucette,* of *Abrams, Bowen & Townes,* Greenville, *for the Appellant,* cite:

*Messrs. Daniel R. McLeod, Atty Gen.,* and *Timothy G. Guinn, Asst. Atty. Gen.,* of Columbia, and *Thomas W. Greene, Sol.,* of Greenville, *for Respondent,* cite:

December 14, 1971.

Moss, Chief Justice:

Harold Raymond Tuckness, the appellant herein, was indicted by the grand jury of Greenville County at the 1970 September Term of the Court of General Sessions and charged with (1) assault with intent to ravish, and (2) assault and battery of a high and aggravated nature. The indictment charged that the crimes took place in Greenville County on September 3, 1970.

The appellant was tried and convicted of an assault with intent to ravish at the 1971 January Term of the Court of General Sessions for Greenville County. At the close of the testimony in behalf of the State, the appellant moved for a directed verdict as to the charge of an assault with intent to ravish and, in the alternative, moved the court to submit to the jury only the issue of assault and battery of a high and aggravated nature. This motion was denied. At the close of all of the testimony the appellant renewed his earlier motion for a directed verdict on the charge of assault with the intent to ravish. This motion was also denied. After the verdict of guilty was returned by the jury, the appellant moved for a new trial and such was denied. Timely notice of intention to appeal to this court was given.

The appellant charges the trial judge with error in not directing a verdict in his favor on the charge of assault with intent to ravish. In considering the question of whether the trial judge erred in refusing to direct a verdict in favor

of the appellant, the evidence and the inferences which may be reasonably drawn therefrom must be viewed in the light most favorable to the State. *State v. Jordan,* 255 S. C. 86, 177 S. E. (2d) 464. When the evidence is susceptible of more than one reasonable inference, questions of fact must be submitted to the jury. Among other considerations is the credibility of the witnesses, including that of the appellant himself. *State v. Richburg,* 250 S. C. 451, 158 S. E. (2d) 769.

Ravish or rape, the words being synonymous, is defined as the carnal knowledge of a woman by force and against her consent. *Moorer v. MacDougall,* 245 S. C. 633, 142 S. E. (2d) 46. In order to constitute the crime of rape there must be some degree of penetration of the female genital organ by the male genital organ, but any penetration, however slight, is all that is necessary. It is not necessary for the State to prove emission. *State v. Worthy,* 239 S. C. 449, 123 S. E. (2d) 835. To convict of assault with intent to ravish or rape, the State must prove an assault by a male on a female with the intent to commit rape as we have heretofore defined. *State v. Wilson,* 162 S. C. 413, 161 S. E. 104.

The appellant admits that he committed an assault upon the prosecutrix but denies that he intended to commit the crime of rape.

The question of the intent with which an act is done is one of fact and is ordinarily for jury determination except in extreme cases where there is no evidence thereon. The intent with which an act is done denotes a state of mind, and can be proved only by expressions or conduct, considered in the light of the given circumstances. *State v. Johnson,* 84 S. C. 45, 65 S. E. 1023. Intent is seldom susceptible to proof by direct evidence and must ordinarily be proven by circumstantial evidence, that is, by facts and circumstances from which intent may be inferred.

In *State v. Wilkins,* 217 S. C. 105, 59 S. E. (2d) 853, the defendant was convicted of an assault with intent to ravish and on appeal contended that there was nothing in the record to show that he intended to rape the prosecutrix, it being argued that he may have had the intent to commit some other crime. This court held that the question of the defendant's intent presented an issue for the jury to decide taking into consideration all of the circumstances, and said:

"If his intent had been, in entering this home, the commission of any crime other than the one of which he was convicted, or if at the time he advanced on the prosecutrix when she raised up in bed and caught her throat in his hands his actions indicated any other intent, it would indeed be impossible to say as a matter of law to what limit a would-be rapist would have to go before an overt act has been committed sufficient to warrant a conviction for assault with intent to ravish."

A discussion of the sordid evidence in this case is nauseous but it is necessary in order to properly dispose of the appellant's motion for a directed verdict. It appears from the evidence that the prosecutrix lived in a rural area in the northern part of Greenville County. Her nearest neighbor lived some 500 to 600 yards away. She was married and the mother of four children, the oldest being 25 years of age. On the afternoon of September 3, 1970, she was alone at her home and was in her back yard hanging out clothes that she had washed. While she was so engaged, a Rambler station wagon, driven by the appellant, backed into her driveway. She testified that after greeting the appellant, who was a stranger to her, he inquired if her husband was home. After she gave him a negative answer to this question, she said that the appellant sat in his car and kind of stared at her. At the time, he had his left arm on the window of the car. Thereafter, the appellant stuck a gun under his arm and pointed it at the prosecutrix. She said she heard a clicking sound as if the gun was being cocked. She was directed by the appellant to put down the clothes that she had in her

hands and in obedience thereto she laid them on a grill in the yard. He told her "to pull up your dress" and she raised her dress about six or eight inches. She was then told to pull the dress up higher to which she replied "you don't want to look at me" because "I'm just this big, old fat woman". The appellant then told her to do as he said or that he would kill her. In obedience to his instructions, while he still pointed the gun at her, she pulled her dress up higher and was told to "take off your panties". She testified that she complied with his request and was standing holding her panties in one hand and her dress in the other and "just bare to the world." She was then directed to sit over on the grass. At this time, the appellant got out of his car and the prosecutrix described him as outwardly wearing a man's clothes. She found out later that he had on a garter belt hooked to ladies hose and that such was real baggy on his legs and that he had on a pair of ladies panties. She said that even though she could not see his flesh she knew he was sexually aroused.

The appellant walked over to the prosecutrix and told her to get up on her knees and to pull down his panties, which she did. She said the appellant stood there a few minutes and told her to lie down on the grass and he then "got down between my legs on his knees". She was then instructed to pull her legs up just as close to her stomach as she could. Following this he told her to "pull my privates apart where he could look" and she complied with such direction. She said he touched her genital organ with something at that point and she thought "he was fixing to rape me." She further testified that he had his hand "on my privates" and said "if you holler I'll rip your insides out". She was then told by the appellant to pull up her brassiere as he wanted to see her breasts and after he had looked "he started ejaculating". The appellant then left saying to the prosecutrix "if you tell anybody I've been here or if you call the law in any way I will kill you".

The appellant, testifying in his own behalf, admitted certain parts of the testimony given by the prosecutrix but as to other parts he said he did not remember. He further testified that it was not his intention to have sexual intercourse with the prosecutrix but on cross examination he admitted that he did not know what he was thinking when he got between the legs of the prosecutrix. He testified that when he was between the legs of the prosecutrix "I just started masturbating," such resulted in ejaculation. He further testified that the gun he had in his possession was a toy one and had been left in the car by one of his three children. The appellant also testified that for some 16 years he had worn women's undergarments and while doing so often engaged in masturbation.

A psychiatrist called by the defense testified that his diagnosis was that the appellant was suffering from sexual perversion with a personality disorder of a mixed nature with transvestitism being the primary of his abnormal behavior patterns which include fetishism, voyeurism and exhibitionism. This witness, in his expert opinion, further testified that the appellant did not have the intention to ravish or have sexual intercourse with the prosecutrix.

It is our conclusion, under the conflicting evidence in this case, that a clear issue for the jury as to whether the appellant intended to penetrate the sexual organ of the prosecutrix or to produce emission without penetration was presented. *State v. Coram,* 116 W. Va. 492, 182 S. E. 83. We find no error on the part of the trial judge in refusing the motion for a directed verdict.

The appellant alleges that the trial judge committed error in making comments to one of his witnesses and in failing to grant a mistrial after making such comments.

During the cross examination of the psychiatrist, who was testifying in behalf of the appellant, the court stated "I don't see anything amusing about this case, Doctor" and "I don't see any reason for you to be smiling then".

The witness and counsel for the appellant agreed that there was not anything funny or amusing about the trial. However, following the statement of the trial judge to the witness, counsel for the appellant moved for a mistrial based upon what the trial judge had said.

We have held that the granting of a motion for a mistrial lies within the sound discretion of the trial judge, *Riddle-Duckworth, Inc. v. Sullivan,* 253 S. C. 411, 171 S. E. (2d) 486, whose ruling thereon will not be disturbed in the absence of an abuse of discretion amounting to an error of law. *Crocker v. Weathers,* 240 S. C. 412, 126 S. E. (2d) 335. The burden on motion for mistrial because of anything occurring during trial is upon movant to show not only error, but resulting prejudice. *Keller v. Pearce-Young-Angel Co.,* 253 S. C. 395, 171 S. E. (2d) 352.

We quote from 58 Am. Jur. (2d), New Trial, Section 54, P. 244, the following:

"Generally, the act of a judge in a criminal case in admonishing, rebuking, or warning a witness because of the latter's language or conduct is not such misconduct as to require a new trial. The court may reprove or rebuke a witness for levity or profanity, and it is proper for him to correct the volubility of a witness and admonish those who show hesitation, reluctance, or evasion.

"But it is ground for a new trial if the judge makes remarks to a witness indicating that he has prejudged the case, or reflects upon the credibility of the witness."

It is the right and duty of the trial judge to see that the trial is conducted in an orderly dignified manner and that proper decorum is maintained in the court room while the trial is under way.

An analagous case to the one here was that of *Kendrick v. Healy,* 27 Wyo. 123, 192 P. 601, the court stating:

"In nothing that the court said was there an expression of opinion or comment upon the truthfulness or credibility of the witness, nor were the remarks, in our opinion, so

severe as to require that they be held prejudicial. We think it appears from the language of the court addressed to the witness, that it was intended only as a caution to pay attention to the questions and answer so as to be heard, and that the occasion was not one for levity. That the court may properly do, without reflecting upon the character or credibility of the witness, if warranted by what has occurred. It occasionally happens that some occurrence upon a trial will warrant and may require comment by the court upon the conduct of a witness, by way of caution, admonition or censure, and when such comment is within due bounds, and appropriate to the character of the occurrence, it will not be subject to a valid exception."

Here, as in the *Kendrick* case, the trial judge made no comment that would reflect upon the truthfulness or the credibility of the witness. We find no error on the part of the trial judge.

The exceptions of the appellant are overruled and the judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.