2454

The STATE, Respondent v. Kyle WATTS, Appellant.

(467 S.E. (2d) 272)

Court of Appeals

*Assistant Appellate Defender Robert M. Pachak,* of *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General Charles Molony Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott,* and *Assistant Attorney General William Edgar Salter, III,* Columbia; and *Solicitor W. Townes Jones, IV,* Greenwood, *for respondent.*

Submitted Dec. 5, 1995.

Decided Feb. 5, 1996.

*Per Curiam:*

Appellant, Kyle Watts, was indicted and tried for conspiracy to distribute crack cocaine, distribution of crack cocaine, and distribution of crack cocaine within one-half mile of a school. A directed verdict was granted on the conspiracy charge, and a jury convicted Watts on both distribution charges. On appeal, Watts first claims the trial judge erred in denying his motion for a mistrial when a witness for the State improperly attacked his character, although he had not placed his character in issue. He next contends the trial judge erred in failing to grant him either a directed verdict, a mistrial, or a continuance when the evidence presented by the State varied from the allegations in the indictment. We affirm.[1]

## Scope of Review

Because Watts was found guilty by a jury, this court's jurisdiction extends merely to the correction of errors of law, and factual findings implicit in the jury's verdict will not be disturbed unless review of the record discloses no evidence which reasonably supports the jury's findings. We are not at liberty to pass upon the veracity of the witnesses or determine this case according to what we think is the weight of the evidence. *State v. Bethea*, 241 S.C. 16, 126 S.E. (2d) 846 (1962); *see also Jones v. Sun Publishing Co.*, 278 S.C. 12, 292 S.E. (2d) 23 (1982); *Hutson v. Cummins Carolinas*, 280 S.C. 552, 314 S.E. (2d) 19 (Ct. App. 1984). Furthermore, in ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Bryant*, 316 S.C. 216, 447 S.E. (2d) 852 (1994); *State v. Morgan*, 282 S.C. 409, 319 S.E. (2d) 335 (1984). The motion should be granted if the evidence merely raises a suspicion of the defendant's guilt, or is such to permit the jury to merely conjecture or speculate as to the accused's guilt. *State v. Brown*, 267 S.C. 311, 227 S.E. (2d) 674 (1976); *State v. Barksdale*, 311 S.C. 210, 428 S.E. (2d) 498 (Ct. App. 1993). However, if the State presents any substantial evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the defendant or from which the defendant's guilt may be fairly and logically deduced, the case must go to the jury.

---

[1] We decide this case without oral argument because it would not aid the Court in resolving the issues involved.

*State v. Prince,* 316 S.C. 57, 447 S.E. (2d) 177 (1993); *State v. Poindexter,* 314 S.C. 490, 431 S.E. (2d) 254 (1993). On appeal from the denial of a motion for directed verdict, this court must view the evidence in the light most favorable to the State. *Prince,* 447 S.E. (2d) 177; *State v. Schrock,* 283 S.C. 129, 322 S.E. (2d) 450 (1984).

## Facts

Viewed in the light most favorable to the State, the facts are as follows. Eleanor Savage, a special agent with the State Law Enforcement Division (SLED), testified that on March 5, 1993, she along with Special Agent Ray Lominack was assisting the Greenwood City Police Department with an ongoing, undercover narcotics investigation in Greenwood. They worked directly with Greenwood's Assistant Chief of Police Mike Butler and Detective Felard as well as with a confidential informant. Between 1:30 and 2:00 p.m., the group met at a predetermined point and discussed their plans for the undercover operation. The officers frisked the confidential informant and determined he did not have any weapons or drugs in his possession. Agent Lominack outfitted Agent Savage with a beeper wire, a small transmitting device which allowed the other officers to perform audio surveillance of her and the confidential informant. As soon as they determined the beeper wire worked properly, they went to the Green Street area in the city.

Agent Savage and the informant traveled together in one car while the other officers performed surveillance from two different, unmarked cars. Agent Lominack and Detective Felard conducted audio surveillance by monitoring the beeper wire. Although Assistant Chief Butler could not monitor the beeper wire, he conducted surveillance roughly four blocks away from Savage. Agent Savage called out the street names that she passed as she drove down the road. When she and the confidential informant reached Watts's residence at 806 Green Street at about 2:30 p.m., Agent Savage stopped the car. She observed Watts and two other black males standing in the front yard of the residence. Once Agent Savage stopped the car, the informant asked Watts, "[D]o you have a thirty?" Watts gestured that he had the drugs.

Agent Savage then got out of her car and walked towards Watts and his two friends. Watts immediately reached down

and retrieved a piece of aluminum foil containing a small piece of crack cocaine which was hidden in a drainage ditch near the house. He handed the crack to one of his friends, whom Agent Savage identified as Harold Baylor. Baylor had another piece of crack cocaine in his hand as well. Baylor handed both pieces to Agent Savage. After giving Baylor thirty dollars in State funds, Agent Savage asked him if he could get her some powdered cocaine. Baylor indicated that he could. The third man present, Germaine Williams, nodded his head and made gestures during this conversation, indicating he agreed with Baylor.

When this conversation ended, Agent Savage returned to her car and left the scene. Using the beeper wire, she immediately relayed the details of the transaction, and described Watts, Baylor and Williams for Agent Lominack and Detective Felard. Because she had previously met Watts on two separate occasions, she did not have any problems identifying him as one of the participants.

She told Agent Lominack that one of the people who had given her the drugs was wearing a leather jacket with an eight ball depicted on the side of it. Because Agent Savage did not recognize Baylor, she asked Assistant Chief Butler to ride by the scene. By the time he arrived, Watts was wearing the "eight ball" jacket and both Baylor and Williams were present on the scene.

Thereafter, all the officers met at their predetermined point. Agent Savage placed the crack cocaine Watts sold her in an evidence bag and labeled it. Officers later arrested Watts. Agent Savage had no difficulty identifying Watts in court as the person she bought the crack cocaine from on March 5, 1993.

## I.

On appeal, Watts first argues the trial court erred in refusing to grant a mistrial after the solicitor pursued a line of questioning which placed his character in issue. Specifically, he maintains that during the direct examination of Agent Lominack, the assistant solicitor asked if the agent knew Watts, and the agent's response raised an improper inference that Watts had a prior record and placed a legally spurious presumption of guilt in the minds of the jurors. The chal-

lenged question and the objection directed to it appear in the following exchange taken from the trial transcript:

Q. Did you know Kyle Watts on—
A. No.
Q. —March the 5th?
A. No. I had been on a previous undercover operation, I had overheard her making some buys, but I've never met him before.
Mr. Wise: Your Honor, I have a matter for the court.

Claiming the assistant solicitor placed his character in issue because a reasonable inference from Agent Lominack's testimony was that Watts had a prior record, Watts moved for a mistrial. The trial court, however, did not view the testimony in the same light as Watts. He did not think the jury would infer that Watts previously sold drugs from this testimony. Therefore, he denied the motion for a mistrial. Still, he offered to strike the testimony from the record or give a curative instruction. Watts declined, noting that by bringing this again to the attention of the jury, Agent Lominack's objectionable statement would only be accentuated instead of diminished.

The granting or refusing of a motion for a mistrial lies within the sound discretion of the trial court whose ruling will not be disturbed on appeal in the absence of an abuse of discretion amounting to an error of law. *State v. Washington*, 315 S.C. 108, 432 S.E. (2d) 448 (1992); *State v. Tuckness*, 257 S.C. 295, 185 S.E. (2d) 607 (1971); *State v. Mc-Fadden*, 318 S.C. 404, 458 S.E. (2d) 61 (Ct. App. 1995). A mistrial should not be granted except in cases of manifest necessity and ought to be granted with the greatest caution for very plain and obvious reasons. *State v. Prince*, 279 S.C. 30, 301 S.E. (2d) 471 (1983). The burden is upon the movant to demonstrate not only error, but resulting prejudice in order to justify a mistrial. *Tuckness*, 257 S.C. at 303, 185 S.E. (2d) at 610.

In rejecting the trial court's offer to strike the testimony or give a curative instruction, Watts waived any complaint he had to the challenged testimony. Because Agent Lominack had already answered the assistant solicitor's question, a motion to strike was necessary to preserve any claim of error on appeal. *State v. Wingo*, 304 S.C. 173, 403 S.E. (2d) 322 (Ct. App. 1991) (alleged improper testimony not

preserved for appellate review where defendant did not move to strike testimony after his objection was sustained). Furthermore, since the error, if any, in this testimony is not manifest, a curative instruction clearly could have eliminated any conceivable prejudice. *State v. Dawkins*, 297 S.C. 386, 377 S.E. (2d) 298 (1989); *see also State v. Hartley*, 307 S.C. 239, 414 S.E. (2d) 182 (Ct. App. 1992) (holding the State's attempt to impeach the defendant by asking him about his prior convictions afforded no basis for an appeal because the defendant refused the trial court's offer to prepare a curative instruction); *accord* 89 C.J.S. *Trial* § 661, at 504 (1955) (the erroneous admission of evidence may be waived by some affirmative act done after the ruling on the admission of the evidence which amounts to an express or implied assent to the reception of the evidence or by acts or statements inconsistent with objections previously urged). Thus, we conclude Watts is entitled to no relief on appeal, since his own conduct has contributed to the alleged error.

Moreover, considering the overwhelming nature of the evidence of Watts's guilt, we do not believe that any error connected with this testimony was so prejudicial as to have reasonably affected the result of the trial or deprived Watts of a fair trial. In applying the harmless error rule, the court must be able to declare the error had little, if any, likelihood of having changed the result of the trial and the court must be able to declare such belief beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. (2d) 705 (1967) (the United States Supreme Court recognized that error of even constitutional magnitude may be harmless if, considering the entire record on appeal, the reviewing court finds beyond a reasonable doubt that the error did not contribute to the verdict). Under the facts of the present case, we hold there was little, if any, likelihood that the testimony in question, to which the trial court sustained Watts's objection, could have changed the result of the trial, and such belief is declared beyond a reasonable doubt by this court in accordance with the requirement of *Chapman. See State v. Mitchell*, 286 S.C. 572, 336 S.E. (2d) 150 (1985) (wherein our Supreme Court deemed harmless an error in the admission of hearsay testimony where, notwithstanding the hearsay testimony, there was abundant evidence in the record

from which the jury could have found the appellant guilty); *United States v. Peed,* 714 F. (2d) 7 (4th Cir. 1983) (no prejudice resulted from the jury's being told that the defendant had been a "target" of an investigation by the United States Attorney leading up to grand jury proceedings). Here, the prosecution introduced overwhelming and uncontradicted proof of each element of the offenses charged, including identity, such that any error in allowing Agent Lominack's testimony to stand was clearly nonprejudicial and harmless beyond a reasonable doubt.

## II.

Watts's second claim of error is that the trial court improperly denied his request for directed verdict, mistrial, or continuance when the evidence presented by the State varied from the allegations in the indictment. The second and third counts of the indictment alleged that Watts and Germaine Antonio Williams aided and abetted one another in distributing crack cocaine to Agent Savage and that the distribution occurred within a half-mile of a school. However, the evidence presented at trial showed that Watts and Harold Baylor aided and abetted one another. Watts claims this was a material variance which deprived him not only of his right to a fair trial, but also his right to present a defense. We disagree. Because the contested matters alleged in the indictment were not an element of either distribution offense, and thus, the variance between the evidence presented by the State and the allegations in counts two and three of the indictment was not material, we find no error and conclude that Watts's motions were properly denied.

At the conclusion of the State's case, Watts moved for a directed verdict on the charge of conspiracy to distribute crack cocaine because the indictment alleged he had conspired with Germaine Williams, but the State's evidence showed ". . . quite clearly that if there was a conspiracy by Mr. Watts it was with one Harold Baylor, which is defective, in fact, from what the indictment charges." Watts made a similar motion with respect to counts two and three of the indictment. In the alternative, he moved for a mistrial or a continuance.[2]

---

[2] In support of these motions, Watts claimed he suffered prejudice when the State's proof varied from the allegations in the indictment:

In response, the State noted it had presented evidence that Williams had conspired with Watts and Baylor by participating in Agent Savage's conversation with Baylor about selling her powdered cocaine. The State further noted that Williams had pled guilty to the conspiracy count.

Although the trial judge found that there was sufficient evidence to go to the jury on the two distribution charges, he granted Watts's motion for directed verdict on the conspiracy charge. As relates to the second and third counts of the indictment charging distribution of crack cocaine, the court specifically found that the essential elements of those counts were that Watts willfully, knowingly, and unlawfully distributed crack cocaine to an undercover agent, and this occurred within a half-mile radius of a school. He further found the indictment sufficiently put Watts on notice of these charges, and the remaining portions of the indictment were superfluous.

In making his ruling, the court did not specifically address Watts's motions for continuance or a mistrial, nor did Watts renew these motions or otherwise obtain specific rulings on them. Instead, the court only ruled on the motion for a directed verdict. Therefore, Watts's claim that he was entitled to either a continuance or a mistrial is not properly before this court. To be preserved for appellate review, an issue must be both presented to and passed upon by the trial court. If the issue is raised but not ruled on, it is not preserved for appeal. *State v. Hoffman*, 312 S.C. 386, 440 S.E. (2d) 869 (1994); *Varnadore v. Nationwide Mut. Ins. Co.*, 289 S.C. 155, 345 S.C. (2d) 711 (1986); *State v. Vanderbilt*, 287 S.C. 597, 340 S.E. (2d) 543 (1986). Thus, we only consider whether the variance between indictment and the State's proof entitled Watts to a directed verdict.

In South Carolina, "[i]t is a rule on universal observance in administering the criminal law that a defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment." *State v. Gunn,*

---

[t]he problem I have, to be candid with the Court, is I've got Williams to testify. I don't need Williams now to testify. Harold Baylor, however, is missing. I don't know where he is. If I had known we were trying Harold Baylor's case, I would have requested a continuance so I could ... locate Harold Baylor because he is the one that I need right now.

However, when the trial court asked Watts's counsel if he had filed any discovery motions, he indicted he had not.

313 S.C. 124, 136, 437 S.E. (2d) 75, 82 (1993); *State v. Cody*, 180 S.C. 417, 186 S.E. 165 (1936). A material variance between charge and proof entitles the defendant to a directed verdict. *Id.* However, a variance is not material "where the matter alleged is not an element of the offense." *State v. Hiott*, 276 S.C. 72, 81, 276 S.E. (2d) 163, 167 (1981). Furthermore, where an indictment contains matters unnecessary to the description of an offense, the unnecessary language may be disregarded as surplusage, and no proof thereof is required. *See State v. Alexander*, 140 S.C. 325, 138 S.E. 835 (1927); *State v. Thompson*, 305 S.C. 496, 409 S.E. (2d) 420 (Ct. App. 1991); *State v. Toliver*, 304 S.C. 298, 403 S.E. (2d) 676 (Ct. App. 1991).

Applying these rules to the present case, it is apparent that the trial judge properly denied Watts's directed verdict motion on the two distribution offenses. The essential elements of the offense of distribution of crack cocaine which the court charged the jury the State was required to prove were: (1) Watts had actual control, or the right to exercise control over the crack cocaine; (2) he knowingly distributed or delivered the crack cocaine; (3) the substance upon analysis was, in fact, crack cocaine; and (4) the offense occurred in Greenwood County. *See* S.C. Code Ann. § 44-53-375 (Supp. 1994). The charge of distribution of crack cocaine within one-half mile of a school required the same proof with an additional element that the distribution occurred within a one-half mile radius of the grounds of an elementary, middle, or secondary school. *See* S.C. Code Ann. § 44-53-445 (Supp. 1994). Here, the indictment varied from the evidence presented by the State in that the indictment listed the wrong accomplice. This, however, does not constitute a material variance because the name of the accomplice is not a material element of either of the distribution charges. At most, this matter was mere surplusage, and the State was not required to introduce proof thereof. *Toliver*, 304 S.C. 298, 403 S.E. (2d) 676; *Alexander*, 140 S.C. 325, 138 S.E. 825. Thus, we conclude the State's evidence sufficiently established each element of both offenses, and the cases were properly submitted for jury determination.

For the foregoing reasons, Watts's convictions are affirmed.

Affirmed.

HOWELL, C.J., and CURETON and GOOLSBY, JJ., concur.