481 S.E.2d 439

The STATE, Respondent,

v.

Cornelius BARTON, Appellant.

No. 2619.

Court of Appeals of South Carolina.

Heard Dec. 3, 1996.

Decided Jan. 20, 1997.

John W. Harte, of Aiken, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Barbara R. Morgan, of Aiken, for respondent.

HOWELL, Chief Judge:

Appellant Cornelius Barton was indicted for two counts of distribution of crack cocaine, one count of unlawful possession of a pistol by a person under twenty-one, and one count of grand larceny of a motor vehicle (the Old Charges). In addition, Barton was indicted for kidnapping, first-degree burglary, and first-degree criminal sexual conduct (the New Charges). Barton pleaded guilty to the Old Charges and the New Charges, and was sentenced by the trial court. Thereafter, Barton moved to withdraw his guilty plea as to the New Charges, or, in the alternative, to reduce his sentences. The trial court denied the motions, and Barton appeals. We affirm.

I.

On April 5, 1995, Barton appeared before Judge James W. Johnson, Jr. to plead guilty to the Old Charges and the New Charges. After reviewing Barton's psychiatric evaluation, the trial court found Barton to be criminally responsible for his actions and competent to stand trial. Neither of Barton's attorneys[1] questioned Barton's competence to stand trial or his criminal responsibility for his actions.

Before taking Barton's pleas, the trial court noted the maximum sentences for each of the charges: up to fifteen years and a $25,000 fine for each charge of distribution of crack cocaine, up to ten years for the charge of grand larceny

---

1. Two different attorneys represented Barton on the Old Charges and the New Charges.

of a vehicle, up to five years on the possession of a pistol charge, up to thirty years on the first-degree criminal sexual conduct charge, up to thirty years on the kidnapping charge, and from fifteen years to life on the first-degree burglary charge.

Mr. Harte, Barton's attorney on the Old Charges, stated he had discussed the Old Charges and the possible sentence on each Charge with Barton. Mr. Harte further stated he believed Barton understood each of the Old Charges and the possible sentences. Mr. Harte then informed the Court that, as to the Old Charges, the Solicitor had agreed not to go forward on certain other pending charges in exchange for Barton's plea. As part of the agreement on the Old Charges, the Solicitor also agreed not to object to Barton's request for a youthful offender sentence, or to running the sentences imposed for the Old Charges concurrently with the sentences imposed for the New Charges.

Mr. Bryant, Barton's attorney in connection with the New Charges, also stated that he had discussed the New Charges and their possible sentences with Barton, and that he believed Barton understood the nature of each of the New Charges and the sentences he could receive. As to the New Charges, the parties described the plea negotiations as follows:

SOLICITOR: There were a number of charges that happened around this time too, some of which were included in the incident which he's pleading guilty to. We are not going forward on Indictments 94–1493 and 1492 which are two charges of possession of a firearm or knife during the commission of a violent crime. We are not going forward on Indictments 1490 or 1487 which is [sic] two counts of armed robbery; Indictment 94–1489 which was grand larceny is being dismissed; so is Indictment 94–1486 for pointing and presenting a firearm. Indictment 94–1485, unlawful possession of a pistol under twenty-one, 94–1484 which is financial transaction card fraud, and there was one unindicted charge which was financial transaction card theft. And your honor, we have agreed to not go forward on those charges in consideration of the plea which he has entered here today.

... And our only consideration for not, agreeing not to go forward on these charges is the substantial period of time he's facing on the three charges he is pleading guilty to. And that was the State's consideration in agreeing not to go forward on the other charges, the fact that he was facing life on the burglary and thirty each on the other two charges.

THE COURT: All right, Mr. Bryant, is that your understanding of the extent of negotiations on the charges that you represent Mr. Barton on?

BRYANT: Yes, sir, only that he would plead to those three charges and the Solicitor's office will nol pross [sic] the remaining charges.

THE COURT: All right. There is no agreed upon recommendation insofar as sentencing is concerned on these charges, is that right?

SOLICITOR: No, sir. I just—been—clear that we consider this a very—

THE COURT: You're going to make a recommendation, Mr. Bryant's going to make a recommendation and there's no agreed recommendation, is that correct?

SOLICITOR: No negotiated sentence, your honor.

Immediately after this exchange, the trial court asked Barton if he had any questions about the plea negotiations on the New Charges. Barton stated he had no questions, and that the attorneys' descriptions reflected his understanding of the plea negotiations. Barton stated he had nothing else to tell the court about the negotiations.

The trial court then conducted a colloquy with Barton to insure the voluntariness of his guilty pleas. Barton stated that he had no questions about the charges or the possible sentence on each charge and that he was freely and voluntarily pleading guilty to the charges. As to the New Charges, Barton stated that he had had sufficient time to discuss the charges with Mr. Bryant and that he was satisfied with Mr. Bryant's representation of him. Barton also stated that, other than the negotiations described in court, no promises had been made to him, and no one had made any promises or recommendations about when he might be eligible for parole or released from prison. After this colloquy, the court accepted

Barton's guilty pleas to the Old Charges and the New Charges.

Based on Barton's extensive juvenile record [2] and the severity of the crimes to which he was pleading guilty, the State recommended that Barton receive the maximum sentences. Mr. Bryant asked for leniency, stating that most of Barton's crimes were the result of his problems with drugs and alcohol. As to the New Charges, the trial court sentenced Barton to thirty years each on the kidnapping and criminal sexual conduct charges, and life imprisonment on the burglary charge, and ordered that the sentences run consecutively. As to the Old Charges, the court sentenced Barton to fifteen years with a $25,000 fine for each of the distribution of crack cocaine charges, ten years on the grand larceny charge, and five years on the unlawful possession of a pistol charge. The court ordered that the sentences on the Old Charges run concurrently to each other and to the sentences imposed for the New Charges.

After the court had pronounced sentence for the New Charges and the Old Charges, but before it had finished stating that the sentences for the Old Charges would run concurrent to those for the New Charges, Barton interrupted, saying "Your honor." The trial court cut Barton off, stating "I don't want to hear from you right now, sir. I'm pronouncing sentence. Don't open your mouth, sir. I am pronouncing sentence."

On April 24, Barton, represented by Mr. Harte, again appeared before Judge Johnson, seeking to withdraw his guilty plea to the New Charges or to have his sentence for those charges reduced. Mr. Harte argued that, had Barton been allowed to speak during the previous proceeding, he would have withdrawn his guilty plea to the New Charges. Harte argued that Barton did not commit the crimes [3] and

---

**2.** Prior to committing the acts giving rise to the Old Charges and the New Charges, Barton had committed a number of crimes, and, on four separate occasions, had been committed to the Department of Juvenile Justice until his twenty-first birthday.

**3.** In support of his claims of innocence, Barton presented an affidavit from Roy Bryant, who initially implicated Barton in the burglary for which he was sentenced to life. In the affidavit, Bryant recanted his

that Barton's guilty plea was not voluntary, because Barton did not understand the sentences he faced. According to Harte, Barton understood that the sentence on the burglary charge would not exceed thirty years. Harte argued that Barton gave his responses to the questioning during the guilty plea in order to gain the trial court's good favor, so that he would be sentenced to no more than thirty years.[4]

The trial court allowed Barton to testify at the hearing. Barton testified that Bryant, who represented him in connection with the New Charges, told him "the plea was going to be for 30 years and to just go ahead and answer the judge's questions so we could go ahead and get it over with." Barton testified that he told Bryant that he was not involved in the burglary, and that Bryant told him to accept the plea and he would be sentenced to thirty years. Barton further testified that the answers he had given during the guilty plea were not true. Barton stated that he would have withdrawn his guilty plea if the trial court had permitted him to speak. Barton also contended he was not guilty of the kidnapping and criminal sexual conduct charges, but that he pleaded guilty to those charges because his attorney informed him that the sentences would be "lighter." On cross-examination, Barton admitted that he heard the trial court inform him that he could receive life imprisonment for the burglary charge, and thirty years for the kidnapping and criminal sexual conduct charges.

After hearing Barton's testimony, Judge Johnson denied the motion to withdraw the guilty plea, stating he was

> convinced that at the time the plea was made and taken ... that it was entered into freely and intelligently and voluntarily. There was no question in my mind at the time that the plea was taken that Mr. Barton knew the charges, the possible sentence, made specific representations to the Court as far as his understanding of the charges and the possible sentences, denied that there was any kind of agreement, any kind of recommendation on these particular charges.

---

previous statement and claimed that Barton was not involved in the burglary.

4. While Harte also raised questions about Barton's competency, Barton does not pursue the issue of competency on appeal.

As to the alternative motion to reduce the sentences, Harte requested that the trial court consider the burglary independent of the other crimes and impose a sentence that, upon completion, would give Barton an opportunity to do something with the remaining years of his life. Harte also requested that the life sentence and the thirty year sentences be ordered to run concurrently, rather than consecutively, with the sentences imposed on the Old Charges. The court denied the motion, finding the sentences imposed to be proper under the circumstances.

## II.

### A.

On appeal, Barton first contends the trial court erred by refusing to allow him to speak at the guilty plea hearing. We disagree. A trial judge has the inherent power to maintain order and decorum in his courtroom. *See, e.g., State v. Sinclair,* 275 S.C. 608, 274 S.E.2d 411 (1981) (conduct of a criminal trial is left largely to the sound discretion of the trial judge); *State v. Shelton,* 270 S.C. 577, 243 S.E.2d 455 (1978) (trial judge has inherent power to maintain order in his court); *State v. Tuckness,* 257 S.C. 295, 185 S.E.2d 607 (1971) (trial judge has the right and duty to ensure that proper decorum is maintained and that trial is conducted in an orderly and dignified manner). The trial court gave Barton ample opportunity to speak before sentence was pronounced. Thus, there was no error in refusing to allow Barton to disrupt the sentencing.[5]

### B.

Barton also contends the lower court erred by denying his motion to withdraw his guilty plea. According to Barton, the trial court should have allowed him to withdraw

---

**5.** Moreover, as Barton acknowledged during oral argument, any error by refusing to allow him to speak was cured when the trial court allowed Barton to testify during the hearing on the motion to withdraw the guilty plea.

his guilty plea because it was not knowingly and voluntarily made.[6] We disagree.

A guilty plea may not be accepted unless it is voluntarily and understandingly made. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Lambert,* 266 S.C. 574, 225 S.E.2d 340 (1976). However, once a defendant enters a guilty plea, whether to allow withdrawal of the plea is left to the sound discretion of the trial judge. *State v. Riddle,* 278 S.C. 148, 292 S.E.2d 795 (1982); *State v. Rosier,* 312 S.C. 145, 439 S.E.2d 307 (Ct.App.1993).

At the hearing on Barton's motions, the trial court, after listening to Barton's testimony and his attorney's arguments, concluded that Barton's guilty plea was knowingly and voluntarily made and that Barton understood the nature of the charges against him and the possible consequences of his guilty plea. Accordingly, the court refused to allow Barton to withdraw his plea. The record clearly supports the conclusion that Barton understood the plea agreement as to the New Charges and that he freely and voluntarily pleaded guilty to the New Charges. Therefore, this Court cannot say the trial court abused its discretion by refusing to allow Barton to withdraw his guilty plea.

Barton, however, argues that, under the peculiar circumstances of this case, the trial court did abuse its discretion by refusing to allow him to withdraw his guilty plea. According to Barton, because he objected during the guilty plea proceedings and supported his motion to withdraw the plea with evidence demonstrating his innocence, the trial court should

---

6. We note that Barton does not contend on appeal that the trial court should not have accepted his guilty plea because it was not knowingly and voluntarily made. While Barton's attempt to speak after sentence was pronounced may have indicated that he was unhappy with the sentences imposed by the trial court, this Court cannot construe Barton's interjection as an indication that his guilty plea was not knowingly and voluntarily made. Thus, any challenge to the knowing and voluntary nature of Barton's plea could be raised only in a petition for post-conviction relief. *State v. McKinney,* 278 S.C. 107, 292 S.E.2d 598 (1982) (absent a timely objection during the guilty plea proceeding, the unknowing or involuntary nature of guilty plea cannot be raised on direct appeal, but must be addressed through the more appropriate channel of post-conviction relief).

have granted his motion to withdraw his guilty plea. Again we disagree.

First, even if Barton's "Your Honor" could be construed as an objection, we must note that Barton "objected" only during sentencing; he voiced no objection during the taking of the guilty plea. Given that Barton himself informed the trial court that there was no negotiated sentence as to the New Charges, Barton's apparent displeasure at the sentences actually imposed in no way indicated that his plea was not knowing and voluntary. Second, the evidence supporting Barton's claim of innocence was an affidavit from Roy Bryant, a participant in the burglary, recanting his prior statement implicating Barton in the burglary. Generally, recantation of testimony is considered unreliable and is subjected to close scrutiny. *See, e.g., State v. Porter,* 269 S.C. 618, 239 S.E.2d 641 (1977). Thus, we find no error in the trial court's refusal to assign great weight to Bryant's affidavit.

As noted above, the trial court considered the evidence presented by Barton and allowed Barton to testify about the nature of his guilty plea. Given the court's thorough questioning of Barton during the guilty plea and Barton's failure to object at any point before the court accepted his guilty plea, we find no error in the trial court's refusal to allow Barton to withdraw his plea.

## C.

Finally, we find no merit in Barton's claim that the trial court erred in refusing to reduce the sentences imposed for the New Charges. A trial judge is given wide discretion in determining what sentence should be imposed. *State v. Franklin,* 267 S.C. 240, 226 S.E.2d 896 (1976). Likewise, whether multiple sentences should run consecutively or concurrently is a matter left to the sound discretion of the trial judge. *See* 21 Am.Jur.2d *Criminal Law* § 552 (1981) (trial court has power to order sentences be served consecutively); *cf. Finley v. State,* 219 S.C. 278, 64 S.E.2d 881 (1951) (sentences presumed to run concurrently unless trial judge orders otherwise). Absent partiality, prejudice, oppression, or corrupt motive, this Court lacks jurisdiction to disturb a sentence that is within the limit prescribed by statute. *Stockton v.*

*Leeke,* 269 S.C. 459, 237 S.E.2d 896 (1977); *Franklin,* 267 S.C. at 246, 226 S.E.2d at 898.

Here, the trial court considered Barton's extensive criminal record and concluded that circumstances warranted the maximum sentences prescribed by statute.[7] The record does not reveal, nor does Barton allege, the existence of partiality, prejudice, oppression, or corrupt motive. Accordingly, this Court cannot conclude that the lower court erred in imposing the sentences or in denying Barton's motion to reduce the sentences.

Accordingly, for the foregoing reasons, the decision of the trial court is hereby

**AFFIRMED.**

HUFF and HOWARD, JJ., concur.

---

7. *See* S.C.Code Ann. § 16–11–311(B) (Supp.1995) (first-degree burglary); S.C.Code Ann. § 16–3–652(2) (1985) (first-degree criminal sexual conduct); S.C.Code Ann. § 16–3–910 (Supp.1995) (kidnapping).