THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Johnny Ray
 Gambrell, Appellant.
 
 
 

Appeal From Anderson County
 J. C. Buddy Nicholson, Jr., Circuit Court
Judge

Unpublished Opinion No. 2008-UP-063
Submitted January 2, 2008  Filed January
22, 2008

AFFIRMED

 
 
 
 Deputy Chief Attorney for Capital Appeals Robert M. Dudek, of Columbia, for Appellant.
 Attorney General Henry D. McMaster; Chief Deputy Attorney General
 John W. McIntosh; Assistant Deputy Attorney General Donald J. Zelenka; Assistant
 Attorney General J. Anthony Mabry, of Columbia; and Solicitor Christina Theos
 Adams, of Anderson, for Respondent.
 
 
 

PER CURIAM:  Johnny
 Ray Gambrell appeals his murder conviction.  We affirm.
FACTS

Gambrell
 and Lois Gambrell were married and lived in a rental house on Mahaffey Street in Belton.  Their marriage was tumultuous and Lois was allegedly
 hospitalized after Gambrell beat her.  The parties separated on at least one
 occasion.  On another occasion, Lois asked Shane Garner, the landlord, to
 change the locks as Gambrell would be vacating the house.  One day in June of
 2004, Gambrell told Garner he believed Lois was running around on him.  The
 following night, Gambrell allegedly told Garner he had severely beat Lois.  After
 each incident, the parties reconciled.  
On July
 12 and 13 of 2004, Lois visited her mother, who was recuperating from surgery,
 but Lois did not show up to visit her mother, as expected, on July 14, 2004.  The
 Gambrells neighbors and Garner testified they last saw Lois at the marital
 home approximately July 15, 2004.  On July 16, 2004, Garner visited the house
 to collect rent at approximately 9:30 or 10:00 p.m.  Gambrell did not answer
 the door but eventually came around the side of the house.  Garner testified
 Gambrell appeared nervous and sweaty.  That same evening, Gambrell built a
 large bonfire.  One neighborhood teenager estimated Gambrell started the fire
 at approximately 8:00 or 9:00 p.m.  Another neighborhood teenager noticed the
 fire after he got off work at either 9:00 or 10:00 p.m. that evening.  Garner
 did not notice the fire when he visited Gambrell.  He testified, however, he
 saw Gambrell at approximately 4:00 a.m. the following morning, tending the
 large bonfire.  
Gambrell moved out of the house the following day.  Garner
 testified Gambrell told him that Lois had come to the house, taken all of her
 things, and left.  Gambrell told Garner he thought Lois was staying in a hotel
 in Anderson.  Garner testified the inside of the house was trashed with debris
 and evidence of a fight.  There was also a spot on the carpet that looked like
 blood.  Garner and his family cleaned the house and shampooed the carpet.  There
 were numerous personal items left in the house including womans baloney . . .
 [such as] clothes, womens deodorant, razors, [and] womens products.  Stuff
 like that.  Garner and his family members also cleaned the bonfire debris,
 taking most of it to a landfill.  When Garner ran out of garbage bags, he
 shoveled the remaining debris into garbage barrels in the back yard.  Garner
 found numerous articles in the debris including Loiss birth certificate and
 Social Security card.  
Loiss mother and sister reported Lois missing on or about August
 23, 2004.  City of Anderson Detective James Stewart investigated the missing
 persons report.  Stewart testified Gambrell reported he had not seen Lois in
 three months.  Officer Jamie Brothers also testified Gambrell told him he had
 not seen Lois in three months.  Brothers further testified Gambrell said he
 thought Lois was in Texas with a family member.  
The police investigated and recovered bone fragments in the garbage
 barrels.  Around the burn area, the police also found Loiss jewelry and glasses
 and other metal items such as car keys, zippers, and buttons.  Inside the house,
 the police found the blood stain but were unable to identify the blood as human
 blood.  
The bone fragments were identified by a forensic anthropologist as
 belonging to a woman approximately forty years old and five foot four inches in
 height.  Loiss mother testified Lois was approximately 43 years old at the
 time she disappeared.  The bone fragments were also identified, through DNA
 comparison of Loiss mother, as belonging to an offspring of Loiss mother.  
Gary
 Bean, an arson investigation expert, visited the site and testified he noticed
 the smell of a burned body.  Bean opined the bonfire burned between 10 and 12
 feet in diameter at a temperature, between 1000 and 1300 degrees Fahrenheit,
 sufficient to burn a human body.  A forensic chemist testified a heavy
 petroleum accelerant such as kerosene or diesel fuel started the fire.  Neighbors
 testified Gambrell fed the fire with books and clothes.  In the debris after the
 fire, there was evidence that tires, a mattress, and living room furniture were
 also burned.    
Christopher
 Wickware, a car salesman, testified he sold Lois a Chevrolet Cavalier and later
 hired a company to repossess the vehicle.  The payments were subsequently made
 and the car returned to Wickwares dealership lot between 10:00 p.m. and 6:00
 a.m. one night in August of 2004.  The car was trashed, as if it had been
 outside for a period of time with the windows down.  
The jury convicted
 Gambrell of murder and the trial court sentenced Gambrell to life
 imprisonment.  This appeal follows.
LAW/ANALYSIS

I. Directed Verdict
Gambrell argues
 the trial court erred in denying his motion for a directed verdict.  We
 disagree.
When ruling on a
 motion for a directed verdict, the trial court is concerned with the existence
 or nonexistence of evidence, not its weight. State v.
 Gaster, 349 S.C. 545, 555, 564 S.E.2d 87, 92 (2002).  This court must review
 the denial of a directed verdict by reviewing the evidence and all reasonable
 inferences in the light most favorable to the State.  State v. Burdette,
 335 S.C. 34, 46, 515 S.E.2d 525, 531 (1999).  This court must affirm the denial
 of an accuseds motion for a direct verdict if there is any direct evidence or
 any substantial circumstantial evidence reasonably tending to prove the guilt
 of the accused.  State v. Harris, 351 S.C. 643, 653, 572 S.E.2d 267, 273
 (2002).  The standard of review is the same where the State relies exclusively
 on circumstantial evidence.  State v. Cherry, 361 S.C. 588, 593-94, 606
 S.E.2d 475, 477-78 (2004).
In this case, the
 State presented substantial circumstantial evidence of Gambrells guilt.  Murder
 is defined as the killing of any person with malice aforethought, either
 express or implied.  S.C. Code Ann. § 16-3-10 (2003).  There are numerous
 facts supporting the trial courts denial of the motion for a directed verdict.
Gambrell and Lois
 had a stormy relationship and Gambrell physically harmed Lois on prior
 occasions.  Garner and other witnesses observed Lois at the marital home within
 a day or two of the bonfire.  Gambrell made conflicting statements as to the
 last time he had seen Lois.  Witnesses observed Gambrell at or near the bonfire
 at various times as it burned.  Bones found in the bonfire debris were
 identified as belonging to an offspring of Loiss mother.  See State
 v. Al-Amin, 353 S.C. 405, 411-13, 578 S.E.2d 32, 34-36 (Ct. App. 2003)
 (Concealment or attempted destruction of the body of a murdered person is a
 probative fact tending to show guilt.).  Other items belonging to Lois were
 found near the burn site.  Loiss vehicle was mysteriously returned to the car
 dealership near the time the investigation into Loiss disappearance began.  Taken
 together, these facts constitute substantial circumstantial evidence presented
 by the State to warrant submission of the case to the jury.  The motion for a
 directed verdict was properly denied.
II. Motion for Mistrial
Gambrell next
 argues the trial court erred in refusing his motion for a mistrial based on
 Officer Stewarts statement on cross-examination.  We disagree.  
During
 cross-examination, defense
 counsel questioned Stewart about Gambrells alleged statement that he had not
 seen Lois in three months.  Defense counsel asked:  Could it have been that he
 said [he] hadnt seen her in three or four weeks . . . ?  Stewart replied: 
 No, sir.  I am certain on that.  I was walking back to the control booth at
 the Anderson County Detention Center.  The State briefly redirected and
 defense counsel moved for a mistrial.  Defense counsel declined the trial
 courts offer of a curative instruction.  
We find
 Gambrell waived this issue by declining the curative instruction.  See State v. Watts, 321 S.C. 158, 164-65, 467 S.E.2d 272, 276 (Ct. App.
 1996) (finding defendant waived issue by rejecting offer by trial court to give
 a curative instruction).
CONCLUSION
Accordingly,
 Gambrells conviction is
AFFIRMED.
ANDERSON, SHORT, and WILLIAMS, JJ., concur.